## City of York School District's Appeal.

*Constitutional law — Statutes—Local and special legislation — Act of June 6, 1893—Burial places.*

The act of June 6, 1893, P. L. 342, entitled "An act authorizing and regulating the taking, use and occupancy of certain public burial places, under certain circumstances for purposes of common school education," is local and special legislation and repugnant to article III. sec. 7, of the constitution forbidding the general assembly to pass any local or special law "regulating the affairs of counties, cities, townships, wards, boroughs or school districts," or "relating to cemeteries, graveyards, or public grounds, not of the state."

Argued May 23, 1895. Appeal, No. 32, July T., 1895, by the City of York School District, from order of C. P. York Co., setting aside report of viewers. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for the appointment of viewers to assess damages for the taking of one half acre of a public burial ground for school purposes.

From the record it appeared that John Penn and John R. Coates by deed dated June 11, 1816, conveyed to the burgess and inhabitants of the borough of York " two contiguous lots of ground called Potter's Field, situate on the East side of Beaver Street, bounded south by New Street (now College Avenue) and north by the Roman Catholic burying ground, to have and to hold the said two contiguous lots called Potter's Field unto the Burgess and inhabitants of the Borough of York, to be kept as a public burial place forever and for no other use, intent or purpose." These lots have been used as a public burial place ever since the conveyance. The board of school controllers of the City of York School District, on Feb. 8, 1894, passed a resolution, declaring its intention to take a half acre of this burial place for purposes of common school education under the act of June 6, 1893, P. L. 342, and presented its petition to the court of common pleas of York county for the appointment of viewers to assess damages, etc. The viewers accordingly were appointed and made their report to the court on June 4, 1894. To this report exceptions were filed by the city of York and by R. A. G. Ault, a citizen of said city.

The court sustained the exceptions in an opinion by LATIMER, P. J., and BITTENGER, J., the material part of which is as follows :

" We are compelled to consider the act of assembly in question unconstitutional for several reasons, which will be stated as briefly as possible.

" 1st. Because it impairs the validity of a contract. The deed from John Penn and John R. Coates to the municipal corporation, accepted by the latter, was a contract which is entirely abrogated by this act of assembly, a contract to hold the land to a public charitable use, which is overthrown without any adequate method being provided to secure the substitution of the money value of the land, or any part of it, for the land itself, in the continuance of the charity. And to the limited extent to which it does preserve the charity, to wit: the extent of requiring the reinterment of the dead, it substitutes another trustee, to wit: the board of school directors, in

place of the one chosen by the grantors.   Furthermore, instead
of imposing on the substituted trustee the duty of buying other
land to serve as a public burial place, it leaves it discretion-
ary with the school board to do so, if they deem it necessary.
It is to be observed that the viewers assign this very provision
of the act of assembly as a reason for not awarding any dam-
ages to the city.

"2d. We think the act of assembly unconstitutional because
it is a local and special act regulating the affairs of a school
district, as well as relating to a graveyard not of the state.
Its very title shows that it is special and not general.   It is
entitled 'An act authorizing the taking, use and occupancy of
certain public burial grounds, under certain circumstances.'
It is well known that this act of assembly was prepared and
its passage procured for this particular case, to enable this
school board to take this burial ground; and that this was done
after a special law avowedly for the same purpose had been
vetoed by the governor.   It is special legislation in the guise of
a general law—the most specious and vicious form that special
legislation can assume.   That this particular school district and
this particular burial ground were intended to be affected is
made manifest by the 1st section of the act in which all words
of general operative effect are so hedged in and limited by other
words, confining their operation as to render it extremely pro-
bable that there is no other graveyard in the commonwealth
within the operation of the act.   Certainly they must be very
few in number.   The act would have been little, if any, more
apparently special, if it had enacted that 'whenever the school
board of York city desired to occupy the Potter's Field therein,
it should be lawful for them,' etc.   Localization and specializa-
tion may be produced by matter of description, geographical or
otherwise, or by words of limitation confining the operation of
general terms to an individualized subject-matter.   See Com.
v. Patton, 88 Pa. 258; Philadelphia v. Cemetery Co., 162 Pa.
105; Weinman v. Pass. Ry. Co., 118 Pa. 192.

"Being local and special legislation in regard to a matter
already provided for by general laws, this act violates the last
paragraph of section 7 of act 3 of the constitution.   The act of
April 9, 1867, which is general law, provides ample machinery
for school boards to acquire sites for school houses.   Incident-

ally it may be suggested that if the city of York desires, for any reason, to dispose of this Potter's Field, the act of April 18, 1853, known as the Price act, affords an easy method of doing so, and still preserving the charity.

"Having sustained the 8th and 10th exceptions, we might recommit the report to the viewers, if these exceptions alone were involved. But as in our judgment the act of assembly under which the viewers were appointed is unconstitutional and void, we set aside the report of viewers, and dismiss the petition, thus affording the school board an opportunity, by appeal, to have our ruling reviewed. Feb. 4, 1893, decreed accordingly."

*Error assigned* was order setting aside report of viewers.

*Charles A. Hawkins*, for appellant, cited: Reading v. Savage, 124 Pa. 334; Evans v. Phillipi, 117 Pa. 226,

*Robert F. Gibson*, for appellees—The Act of 1893 is unconstitutional: Ayar's App., 122 Pa. 266; Scranton School Dist. App., 113 Pa. 176; Tyrone Twp. School Dist. App., 22 W. N. C. 513.

PER CURIAM, May 30, 1895:

One of the grounds on which the learned judges of the court below set aside the report of the viewers and dismissed appellant's petition, is, that "the act of assembly of June 6, 1893, under which the view was had is unconstitutional." In that conclusion, they were clearly right for the second reason given by them in support thereof, viz: that the act in question is local and special and therefore unconstitutional. They further say: "It is special legislation in the guise of a general law—the most specious and vicious form that special legislation can assume."

It requires neither argument nor citation of authorities to show that the reason thus assigned for declaring the act unconstitutional is both sound and conclusive. We express no opinion as to other reasons urged in support of the decree.

Decree affirmed and appeal dismissed with costs to be paid by appellant.