Helicon Corporation, t/d/b/a Ruth Cablevision Company, Appellant *v.* The Borough of Brownsville, Appellee.

Argued May 4, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*William M. Young, Jr., McNees, Wallace & Nurick,* for appellant.

*Charles O. Tebley, Jr.,* with him *William M. Radcliffe, Coldren & Coldren,* for appellee.

OPINION BY JUDGE BLATT, August 19, 1982:

Helicon Corporation[1] (Helicon) appeals an order of the Court of Common Pleas of Fayette County confirming a decree nisi which granted the Borough of Brownsville's (Borough) prayer to enjoin Helicon from charging a monthly cable television fee in excess of the maximum rate established by a Borough ordinance.

The following facts were stipulated to by the parties in the trial court. On July 11, 1966, the Borough Council passed Ordinance No. 242 granting to Helicon's predecessor and its assigns, for a period of 20 years, the right to construct, maintain, and operate a community antenna television system in the Borough. Section 3 of Ordinance No. 242 reads as follows:

*Section 3.* There is hereby granted the further right, privilege and authority to the Company to lease, rent or in any other manner obtain the use of towers, poles, lines, cables and other equipment and facilities from any and all public utilities and holders of public licenses and franchises within the limits of the Borough of Brownsville, and subsequent annexations thereto, and to utilize and exercise such use subject to

---

[1] T/d/b/a Ruth Cablevision Company.

all present and future ordinances and regulations of the Borough.

Section 12 of Ordinance No. 242 authorized the Borough to execute a contract with Helicon's predecessor which would provide for construction of the system and related matters, but no such contract was ever entered into by the parties. By a letter dated December 16, 1977, Helicon's predecessor notified its subscribers in the Borough that, effective January 1, 1978, the monthly cable television charge for the first outlet to all subscribers would be increased by $.75 per month. In January 1978, this basic service rate was again increased from $6.75 to $7.50 per month and on February 14, 1978, the Borough Council passed Ordinance No. 335 which provided, *inter alia,* that all rates imposed by cable television companies operating in the Borough were subject to Borough regulation and that, effective March 1, 1978, any increase in the basic service rate in excess of $6.75 per month could be made only with the consent of the Borough Council. On May 24, 1978, however, the Board enacted Ordinance 338 which repealed the $6.75 maximum established by Ordinance 335 and provided that, effective March 1, 1978, the maximum basic service rate would be $7.50 per month. It further provided that the said rate could not be increased without prior approval of the Borough Council. On July 16, 1978, Helicon purchased all of the issued and outstanding stock of its predecessor and, by letter of January 1, 1979, notified its subscribers in the Borough that, effective January 1, 1979, the basic service rate would be raised by $.25 per month (to $7.75), and that the charge for each additional television set would be increased to $2.50 per month.[2] Helicon then informed the Borough that it

---

[2] Neither the stipulated facts nor the record indicate what the charge for each additional television set was prior to the increase to $2.50.

had increased the rates and the Borough responded that it objected to said increases. By letter dated January 3, 1980, Helicon informed the Borough once more that it was necessary to increase its basic service rate by $.50 (from $7.75 to $8.25 per month) and would do so on March 1, 1980. After this last increase was implemented, the Borough sought injunctive relief in the trial court which was granted[3] and the instant appeal by Helicon followed.

Helicon argues first that a Pennsylvania borough's power to regulate the rates charged by a cable television franchise is limited to the imposition of such rate regulation as a condition to the granting of the franchise and that, inasmuch as no such condition attaches to the instant franchise granted by the Borough, it may not regulate Helicon's rates during the term of the franchise as set forth in Ordinance No. 242.

In the *Borough of Scottdale v. National Cable Television Corp.,* 476 Pa. 47, 381 A.2d 859 (1977), our Supreme Court addressed the question of whether or not a borough had the authority to regulate cable television rates during the franchise period. The Court noted that:

---

[3] The decree nisi stated in pertinent part as follows:

[t]he defendant, its officers, representatives and agents are hereby enjoined from charging a rate in excess of $7.75 per month for single TV cable connections in the Borough of Brownsville, until the prior consent of the Borough of Brownsville has been obtained or until a showing has been made that such consent has been unreasonably withheld.

The defendant is further directed to credit the amount charged to each Borough of Brownsville's customer's account in excess of $7.75 per month for a single TV cable connection from March 1, 1980 to date; or in the alternative, the defendant is directed to remit to each customer in the Borough of Brownsville who has been charged in excess of $7.75 per month, the amount in excess since March 1, 1980.

Cable television companies are or tend to be monopolies, have large capital investment, purport to provide their services to the public and make use of consent, license or franchise to use public ways as an important aspect of their businesses. . . . But for the local exercise of control over charges, there is no rate protection for the benefit of the consumer exercised by the federal government or by the Commonwealth.[4] (Footnote omitted.)

*Id.* at 52, 381 A.2d at 862. The Court went on to conclude that under Section 1202 of the Borough Code,[5] which specifically confers the power to regulate the use of public ways, a borough has the implied, if not express, power to regulate monthly cable television rates so long as such regulation is reasonable or does

---

[4] In *Pennsylvania Cable Television Association v. Pennsylvania Public Utility Commission*, 68 Pa. Commonwealth Ct. 187, 448 A.2d 1195 (1982), we recognized that the Public Utility Commission (PUC) could validly exercise its jurisdiction over pole attachment agreements between cable television associations and public utilities under the Communications Act Amendment of 1978, P.L. No. 95-234, §6, 92 Stat. 35, 47 U.S.C. §224, and Section 1102(a)(3) of the Public Utility Code, 66 Pa. C. S. §1102(a)(3), which requires PUC approval of various events, including a public utility's transfer by lease of "property" used or useful in the public service." *Id.*

Here a cable television company, which secured the right to provide its service by means of a franchise agreement with a Borough, has increased the rates it charges customers. Even though the considerations (*e.g.*, the public interest and use of the public way) in the instant matter are similar to those expressed in *Pennsylvania Cable Television Association*, the PUC has not yet extended its jurisdiction beyond agreements made by cable companies with other regulated utilities, so as to cover the situation here. Consequently, it appears that rate protection for the benefit of consumers continues to be left to the local level of government. *Scottdale.*

[5] Act of February 1, 1966, P.L. (1965), *as amended*, 53 P.S. §46202(17).

not constitute a manifest abuse of discretion. *Id.*[6] And here, mindful of *Scottdale,* we believe that the trial court was correct in its conclusion that:

Section 1 of Borough Ordinance No. 242 granted Helicon the right to operate its cable television franchise on the public ways within the Borough. In doing so, Helicon accepted the grant subject to the continuous power of the Borough to regulate the use of public ways which includes rate regulation and which power or authority requires no express condition for its preservation.

It is, therefore, equally true here, that "[t]he acceptance of the terms of the ordinance created a contractual relationship. The Borough, in its control over any increases in the charges, was performing an important function in protecting its residents from being subjected to uncontrolled price increases for the duration of the contract." *Scottdale,* 476 Pa. at 54, 381 A.2d at 863.[7] And, it is well-settled that a municipality's police power, which protects the general welfare and the public interest, cannot be abridged by contract. *Carlino v. Whitpain Investors,* 52 Pa. Commonwealth Ct. 145, 415 A.2d 461 (1980); *see also Oil City v. Postal Telegraph Co.,* 68 Pa. Superior Ct. 77 (1917). Accordingly, Helicon's first argument must fail.

---

[6] The majority in *Scottdale* stated that: "Unless and until there is a valid preemptive control over such *charges* [to consumers] by the federal government or by the Commonwealth, we conclude that Pennsylvania municipalities have the legal authority to control the charges made by cable television companies." *Id.* at 54, 381 A.2d at 863 (emphasis added).

The dissent in *Scottdale* stated that: "The majority today holds that a Borough has authority to regulate the monthly rates charged by a private cable television company simply because cable television wires run beneath city streets. . . ." *Id.* at 55, 381 A.2d at 863.

[7] We note that Helicon does not in its appeal before us challenge the reasonableness of the maximum rate ordinance or that consent for the requested increase was unreasonably withheld.

Helicon next argues that the Borough's regulation of its rates violates the impairment of contract clauses of the United States and Pennsylvania Constitutions. U.S. Const. art. I, §10; Pa. Const. art. I, §17. While we would agree with Helicon's statement in its brief that Ordinance 242 created a contractual relationship which continues to exist between it and the Borough, we do not share its belief that the Borough impaired this contract. Section 1 of Ordinance 242 granted Helicon the right to operate its franchise within the Borough in accordance with the Borough's legal rights under the laws of this Commonwealth, and the ordinances and regulations of the Borough. Section 3 of said Ordinance specified that the use of the public way was "subject to all present and future ordinances and regulations of the Borough." It is well-settled that any law which changes the original intent of the parties by imposing conditions not expressed in the original contract impairs the contractual obligation. *Beaver County Building and Loan Association v. Winowich,* 323 Pa. 483, 187 A. 481 (1936). Here, we agree with the Borough and the trial court that the franchise contract itself (the very right to such use) was conditioned upon existing legal rights held by the Borough under the laws of this Commonwealth and that one such legal right exercised and validly adopted, *Scottdale,* was rate regulation. Thus, we believe it is clear that the ordinance which created the franchise contract contemplated and sufficiently expressed, *Winowich,* the Borough's power to exercise the rights it held under the laws of this Commonwealth. Accordingly, we believe it equally clear that there has been no impairment of contract under either the Federal or this Commonwealth's constitutional provisions.

We will therefore affirm the order of the trial court.

## ORDER

AND Now, this 19th day of August, 1982, the order of the Court of Common Pleas in the above-captioned matter is hereby affirmed.