562 A.2d 996

**Mark Henry SATINOFF Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1989.

Decided Aug. 7, 1989.

94

Mark S. Galper, Shire & Bergstein, American Civil Liberties Union, Greater Pittsburgh Chapter, Monessen, for appellant.

Jack R. Heneks, Jr., First Administrative Asst. Dist. Atty., Fayette County Dist. Attys. Office, Uniontown, for appellee.

Before COLINS and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

This is an appeal by Mark Henry Satinoff (Appellant) from the order of the Court of Common Pleas of Fayette County (trial court) sentencing the Appellant to pay certain fines and court costs for violation of the Borough of Masontown's (Borough) Peddling and Soliciting Ordinance (Ordinance).

On May 2, 1987, Appellant was arrested by Lt. Robert L. Kelly of the Masontown Police Department for violation of the Borough's Ordinance. The Ordinance requires that any

person engaged in peddling, as defined in the Ordinance,[1] apply for a license, the fee for which is $20 per day, for the privilege of peddling between the hours of 9:00 a.m. and 5:00 p.m., Monday through Saturday. On the date of the arrest, Appellant was distributing the Social Workers Party's newspaper, "The Militant," "for a donation of $.75 or whatever pocket change they had" without a license. (Notes of Testimony, March 3, 1988, (N.T.) at 15.)

The district justice found Appellant guilty of violating the Ordinance and Appellant appealed. The trial court conducted a de novo hearing and found that Appellant's activity in the Borough on the date of arrest was not for the sole purpose of disseminating literature on the political ideas of the Socialist Party. The trial court found that Appellant sought to sell subscriptions to The Militant and was successful. The trial court determined that Appellant's conduct was one of a commercial nature beyond the protection of first amendment political speech. The trial court dismissed Appellant's appeal and reinstated the fine and costs imposed by the district justice.

 Initially, we note that the burden of proving that a statute is unconstitutional is on the challenger. *Morris v. Public School Employes' Retirement System,* 114 Pa.Commonwealth Ct. 369, 538 A.2d 1385 (1988). A statute is presumed to be constitutional, and the burden of proving otherwise is heavy. *Morris.* Furthermore, any doubts as to a statute's constitutionality are to be resolved in favor of sustaining the statute. *Parker v. Department of Labor*

---

1. Peddling is defined in the Ordinance as:

 Engaging in peddling, canvassing, soliciting or taking of orders, either by sample or otherwise, for any goods, wares or merchandise upon any of the streets or sidewalks or from house to house within the Borough of Masontown. The word "peddling" shall not apply to:

 (1) Farmers selling their own produce.

 (2) The sale of goods, wares and merchandise donated by owners thereof, the proceeds whereof are to be applied to any charitable or philanthropic purpose.

 (3) Any manufacturer or producer in the sale of bread and bakery products, meat and meat products or milk or milk products.

*and Industry,* 115 Pa.Commonwealth Ct. 93, 540 A.2d 313 (1988).

On appeal Appellant argues that: 1) he was engaged in political activity and not in commercial activity; 2) the imposition of the $20 licensing fee to his political activity renders the Borough's Ordinance unconstitutional; and 3) the trial court erred in refusing to permit the Appellant to testify to his prior experience in selling The Militant in similar communities.

■ The freedom of speech and of press is secured by the First Amendment against abridgement by the United States and is similarly secured by the Fourteenth Amendment against abridgement by a state. *Schneider v. Irvington,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).[2] Also, the right of freedom of speech and freedom of press has broad scope which embraces the right to distribute literature and the right to receive it. *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).[3] However, the United States Supreme Court has determined that the sale of magazines and periodicals are in the area of commercial activity and beyond the exercise of protected First Amendment political speech.[4]

**2.** In *Schneider,* the ordinance required door to door canvassers, solicitors, distributors of circulars, etc. to obtain a permit from the Chief of Police. A member of the Jehovah's Witness religion was arrested for canvassing without the required permit. The U.S. Supreme Court held the ordinance was unconstitutional because of the unbridled discretion which was placed in the Chief of Police.

**3.** In *Martin,* the ordinance flatly prohibited door-to-door distribution of handbills, circulars or other advertisements. The U.S. Supreme Court held the ordinance to be unconstitutional as applied to the activities of a Jehovah's Witness. The U.S. Supreme Court determined:

Door-to-door distribution of circulars is essential to the poorly financed causes of little people. Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved.

*Id.* at 146–157, 63 S.Ct. at 865.

**4.** In *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), Jack H. Breard, a regional representative of a Pennsylvania

■ The record clearly indicates that Appellant's primary purpose was to discuss political ideas and topics contained in The Militant with the residents of the community.[5] Although Appellant testified that The Militant cost $.75 a copy he would accept less than that amount and offered older copies of The Militant for free.[6] Appellant also testified

corporation, was arrested while going from door-to-door in the City of Alexandria, Louisiana, soliciting subscriptions for nationally known magazines. The arrest was solely based on his failure to obtain the prior consent of the owners solicited as required by the ordinance. The Supreme Court upheld the constitutionality of the ordinance and stated:

We agree that the fact that periodicals are sold does not put them beyond the protection of the First Amendment. The selling, however, brings into the transaction a commercial feature. The First and Fourteenth Amendment have never been treated as absolute. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocate are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life. *Id.* at 642, 71 S.Ct. at 932.

5. Mr. Galper to Appellant:
 Q: What was your purpose in going to Masontown that day?
 A. My purpose was to have conversations with residents of the community about the political ideas contained in the newspaper *The Militant* and the political ideas of the Socialist Workers' Party. We were also having a public forum that night at our office in Morgantown, which I invited people to attend to find out further if they had any questions about our political views.
 . . . .
 Q: Mr. Satinoff, can you tell us what your primary purpose was and how—explain whatever role *The Militant* played in that purpose?
 A. *The Militant* is one of the many tools that I have to help get out my ideas and explain my ideas. That's not the only method, but I do it—I can only be with a person for a limited amount of time. It's a piece of literature that I can leave with them so that after I've left their house they have something more in depth to look over and think about.
 N.T. at 15, 23.

6. Mr. Galper to Claimant:
 A: [I] had copies of *The Militant* newspaper, which they could purchase for a donation of $.75 or whatever pocket change they had. I also had older copies of the newspaper which I freely left for no charge at all.
 Q: The back issues would have been free of charge?
 A: That's correct.
 N.T. at 15.

that he had never generated $20 in sales in other communities and that he was unaware the Borough required a $20 licensing fee before going door-to-door.[7] Further, Appellant was not paid to sell The Militant and his sales on the date of arrest amounted to only $5.00. (N.T. at 23, 24.) The small monetary gain from selling The Militant cannot be equated to the commercial activity of door-to-door selling of subscriptions to national periodicals, newspapers and magazines.

Additionally, Appellant contends that the application of the $20 licensing fee to him and other political party members renders the Ordinance unconstitutional because it makes it impossible to disseminate political ideas and speech through door-to-door solicitation. We agree.

A municipality is constitutionally permitted to enact regulations in the interest of public safety, health, welfare or convenience. *Schneider*. Such regulation in the form of an Ordinance must be reasonably drawn and rationally related to the goals of the community. While the Commonwealth contends that the Ordinance is designed to ensure community safety and regulate solicitations and sales to reasonable hours, the Ordinance abridges upon the constitutional liberty to impart information through speech and the distribution of literature. *Schneider*. Appellant testified that he only generated $5 in sales on the date of the arrest and that he never generated $20 in sales. (N.T. at 27.) The $20 licensing fee is not a nominal fee imposed as a regulatory measure calculated to defray the expense of protecting those at home against the abuses of the solicitor. *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105, 63 S.Ct.

7. Mr. Galper to Claimant:
 Q: Have you ever generated $20.00 in going to a community under circumstances similar to those in which you went to Masontown on that Day?
 A: No.
 Q: Were you—prior to your arrest were you ever advised by anyone that there was an ordinance which required you to pay a $20.00 licensing fee and be licensed before going door-to-door?
 A: No, I was not so advised.
 N.T. at 27.

870, 87 L.Ed. 1292 (1943). Further, the Borough failed to present any evidence that the licensing fee defrayed the expense of policing the activities in question or covered the expense in administering the licensing fee. Additionally, Appellant's activities took place within the permitted hours and there were no allegations that his activities were a cover for any wrongdoing.

Therefore, the imposition of the $20 licensing fee upon Appellant's political activities is violative of the First Amendment to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.[8]

Accordingly, we reverse the decision of the trial court.[9]

## ORDER

AND NOW, this 7th day of August, 1989, the order of the Court of Common Pleas of Fayette County at No. 248 S.D., 1987, dated December 19, 1988, is reversed.

8. Article I, Section 7 relevantly provides: "[T]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

9. Because of our resolution of the Appellant's constitutional argument, we do not reach the merits of whether the trial court erred in refusing to permit certain Appellant testimony.