580 A.2d 1174

HARRISTOWN DEVELOPMENT CORPORATION, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES OF the COMMONWEALTH OF PENNSYLVANIA, Ernest D. Preate, Jr., Attorney General of the Commonwealth of Pennsylvania, Richard Tilghman, et al., Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1989.

Decided Sept. 14, 1990.

William B. Ball, with him, Elizabeth B. Place, Ball, Skelly, Murren & Connell, and James W. Evans and James J. Kutz, Shearer, Mette, Evans & Woodside, for petitioner.

Thomas B. York, with him, Calvin R. Koons, Deputy Attys. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for respondents, Com., et al.

Andrew W. Gordon, Buchanan Ingersoll, P.C., for respondent, Richard A. Tilghman et al.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

COLINS, Judge.

On January 5, 1989, Harristown Development Corporation (petitioner or HDC) filed an action seeking declaratory and injunctive relief to prevent the Commonwealth of Pennsylvania, Department of General Services, Leroy S. Zimmer-

man,[1] and Senator Richard Tilghman (collectively respondents), from applying Section 2402(d) of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 632(d) to the petitioner. Section 2402(d) was amended by Section 3 of the Act of October 25, 1988, P.L. 1059 (Act 122) and again by Section 2 of the Act of December 15, 1988, P.L. 1244 (Act 153). Upon completion of the pleading stage on April 20, 1989, Senator Tilghman filed a motion for summary judgment on the basis of legislative immunity. The petitioner, on September 29, 1989, filed a cross-motion for summary judgment on the merits.

The factual background of this matter reveals that the petitioner is a non-profit corporation established in 1974 to combat urban blight through the redevelopment of the central business district of Harrisburg. To date, the HDC has taken significant steps towards this goal. When an area is restored or a building completed, the petitioner actively seeks tenants to occupy its building and shops.

Section 2402(d) of the Code, 71 P.S. § 632(d), pertains to the control and supervision of state-owned buildings and provides the Commonwealth with the authority to lease appropriate space for Commonwealth activities outside of the Capitol complex.

Act 122 was signed into law by Governor Casey on October 25, 1988 and added the following pertinent language to Section 2402(d) of the Code:

> Any non-profit corporation which leases lands, offices or accommodations to the Commonwealth for any department, board, commission or agency shall be deemed an agency as defined by the Act of July 3, 1986 (P.L. 388, No. 84), known as the 'Sunshine Act' and the Act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law, and any such non profit corporation shall be

1. The parties stipulated on April 6, 1989 to amend the pleading substituting Ernest D. Preate, Jr., as the Attorney General of the Commonwealth.

subject to and governed by the provisions of the 'Sunshine Act' and the Right-to-Know Law.

71 P.S. § 632(d).

When the Governor signed this bill into law, he criticized the General Assembly for designating all non-profit organizations as agencies under Act 122. The Governor stated, in a memorandum, that he felt that the Legislature intended only to cover non-profit corporations which existed primarily for the purpose of leasing space to the Commonwealth.

Many non-profit religious and charitable organizations protested the enactment of Act 122 and, as a result, the General Assembly enacted Act 153, which further amended Section 2402(d) of the Code as follows:

Any nonprofit corporation which leases lands, offices or accommodations to the Commonwealth for any department, board, commission or agency with a rental amount in excess of one million five hundred thousand dollars ($1,500,000) per year shall be deemed an agency as defined by the act of July 3, 1986 (P.L. 388, No. 84), known as the 'Sunshine Act,' and the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law, and any such nonprofit corporation shall be subject to and governed by the provisions of the 'Sunshine Act' and the Right-to-Know Law.

71 P.S. § 632(d).

This change in language was sponsored by Senator Tilghman, the head of the Senate Appropriations Committee. Act 153, in essence, requires that all non-profit corporations who lease space to the Commonwealth for a rental amount greater than $1.5 Million Dollars per year shall be considered an agency and be subject to the provisions of both the Sunshine Act[2] and what is commonly known as the Right-to-Know Law.[3]

The petitioner argues that, while there are over 50 non-profit corporations that lease space to the Commonwealth,

2. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.
3. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4.

the petitioner is the only non-profit corporation that exceeds the rental limits. Thus, the petitioner maintains that Act 153 is unconstitutional and will impose grave injury upon it, insofar as it will not be able to act with speed and confidentiality with respect to its business activities; and be unable to retain needed employees, because it will have to open to the public all of its books, and financial records. Furthermore, respondent, Tilghman and other organizations have already made demands that the petitioner comply with Act 153.

The respondents, on the other hand, argue that Act 153 is constitutional and, furthermore, respondent Tilghman, individually, asserts that legislative immunity is a bar to the petitioner's claim.

■ It is well settled that summary judgment is only appropriate where a case is free from doubt; that is, when the moving party has established that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Mancia v. Department of Transportation*, 102 Pa.Commonwealth Ct. 279, 517 A.2d 1381 (1986); Pa.R.C.P. No. 1035.

## I. SENATOR TILGHMAN'S CLAIM FOR LEGISLATIVE IMMUNITY

■ Senator Tilghman argues in his motion for summary judgment that all claims against him are barred by legislative immunity. Respondent Tilghman has been a member of the State Senate since 1969. Furthermore, he has served on the Senate Appropriations Committee since 1974, with the past eight years as Majority Chairman of the Committee. In this capacity, Senator Tilghman has the responsibility to review and investigate the expenditure of Commonwealth funds. Senator Tilghman maintains that the requests for information he sought from the petitioner were made on his official Senate stationery and in his capacity as Chairman of the Appropriations Committee.

In paragraph five of its complaint, the petitioner avers that:

Defendant, the Honorable Richard Tilghman is a member of the Senate of the Commonwealth of Pennsylvania with an office at A281, [sic] Capitol Building, Harrisburg, Pennsylvania. Defendant, Tilghman has in the past made demands for financial and other information upon HDC. HDC believes and therefore avers that defendant Tilghman will continue to make such demands in the future, and that such future demands will be based upon the statute challenged in this action.

As previously noted, Senator Tilghman asserts that all requests for information from the petitioner were a result of his performing his legislative duties to oversee the expenditure of Commonwealth funds. The petitioner argues that Senator Tilghman's requests for documents were not made within his legislative sphere; thus, the Doctrine of Legislative Immunity is inapplicable.

Article II, Section 15 of the Pennsylvania Constitution, the Speech and Debate Clause provides:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; *and for any speech or debate in either House they shall not be questioned in any other place.* (Emphasis added.)

In *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986), our Supreme Court reiterated its holding in *Consumers Education and Protective Association, International, Inc. v. Nolan,* 470 Pa. 372, 382–83, 368 A.2d 675, 681 (1977) "that the Pennsylvania Speech and Debate Clause ... should be broadly interpreted to protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine whether it falls within the 'legitimate legis-

lative sphere.' " *Id.* 510 Pa. at 171, 507 A.2d at 329–330 (footnote omitted). Thus, here as in *Consumer Party,* "in ascertaining whether the [respondent is] immune from suit in the instant case, we must determine whether [Senator Tilghman's] activities fall within the 'legitimate legislative sphere' and whether such immunity is necessary to protect the independence and integrity of the legislature." *Id.,* 510 Pa. at 173, 507 A.2d at 330.

Respondent Tilghman's requests for information under Act 153 were made in his capacity as a State Senator and head of the Appropriations Committee. This is clearly within the legislative sphere. To permit a cause of action against respondent Tilghman for every instance for which he requested information concerning Commonwealth expenditures would go against the holding in *Consumer Party* that broad interpretation should be given to the Speech and Debate Clause to protect the legislature from judicial interference with their legitimate legislative activities.

Furthermore, in *Consumer Party,* the Supreme Court relied heavily upon *Consumers Education.* In *Consumers Education,* a taxpayer organization sought to maintain an action for an alleged violation of the Sunshine Act, against a State Senator individually and in his capacity as Committee Chairman. The Supreme Court held that an action could not be maintained on the basis of the Speech and Debate Clause, because the action had occurred within the legislative sphere. The petitioner's suit avers that Senator Tilghman was acting in his legislative capacity. If, as the petitioner argues, Senator Tilghman was acting as a private citizen, then its complaint against the Senator should have averred that Senator Tilghman was a private citizen of the Commonwealth and not listed his Senatorial office as his address.

Keeping in mind that a grant for summary judgment will only be entered when a party is entitled to the same as a matter of law and there are no outstanding factual issues to be resolved, we will grant Senator Tilghman's motion for summary judgment on the basis of legislative immunity.

As a matter of law, under Article II, Section 15, the Speech and Debate Clause and the *Consumer* cases, Senator Tilghman is entitled to the grant of summary judgment as a matter of law. Having removed Senator Tilghman from the suit, we must next determine whether the petitioner is entitled to summary judgment against the remaining parties.

## II. PETITIONER'S MOTION FOR SUMMARY JUDGMENT

■ The petitioner maintains that Act 153 does not apply to it, because the Right-to-Know Law and the Sunshine Act do not embrace petitioner within its terms, because it is not an agency, as defined by either the Sunshine Act or the Right-to-Know Law.

Section 273 of the Sunshine Act defines "agency" as:

The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policymaking business, any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth or any State, municipal, township or school authority, school board, school governing body, commission, the boards of trustees of all State-aided colleges and universities, the councils of trustees of all State-owned colleges and universities, the boards of trustees of all State-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs, or has for its purpose the performance of, an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. The term does not include a caucus nor a meeting

of an ethics committee created under rules of the Senate or House of Representatives.

65 P.S. § 273.

The HDC does not fall within the Sunshine Act's definition of "agency." The HDC does not qualify as a body authorized to take official action as those listed in the Sunshine Act. While HDC was created pursuant to the Nonprofit Corporation Law, this statute does not declare in substance that HDC performs an essential government function. The purpose of the Sunshine Act is to provide the public a right to be present at all meetings of *agencies,* because secrecy in *public* affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society. 65 P.S. § 272(a). The petitioner is not an agency and its affairs are not public, because it is a private non-profit corporation.

Similarly, the HDC does not qualify as an agency under the Right-to-Know Law. Section 1 of the Right-to-Know Law defines "agency" as:

Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority of similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

65 P.S. § 66.1.

HDC exercises no "governmental authority and takes no official action." The petitioner is not an agency, because the HDC is not a part of the Executive Branch, nor a political subdivision of the Commonwealth and, furthermore, was not created by a statute which declared, that it "performs or has for its purpose the performance of an essential government function."

In *Mooney v. Temple University Board of Trustees,* 448 Pa. 424, 292 A.2d 395 (1972), the Pennsylvania Supreme

Court held that a private non-profit corporation cannot be considered an agency under the Right-to-Know Law. In *Mooney,* various individuals sought to compel the Board of Trustees of Temple University to make available for inspection the universities' financial and budgetary information. The Pennsylvania Supreme Court, in affirming this Court, rejected the contention that Temple, a non-profit corporation, chartered for educational purposes, had become similar to a state or municipal authority solely because of increased financial assistance from the Commonwealth. The Supreme Court went on to hold that the regulatory scheme provided by the General Assembly to safeguard against improper expenditures in public funds in no way intrudes upon or alters the petitioner's status as a non-profit corporation.

The respondents argue that, because the petitioner receives substantial rental income from the Commonwealth, it is necessary that all of HDC's business records be open to the public. The Supreme Court in *Mooney* rejected "the contention that Temple, a non-profit corporation chartered for educational purposes, has become 'similar' to a 'State or municipal authority' solely because of increased financial assistance from the Commonwealth." *Id.,* 448 Pa. at 429, 292 A.2d at 398 (footnote omitted). It is to be noted that HDC was incorporated for a non-profit purpose, and the fact that it collects a substantial portion of its income from the Commonwealth does not subject the petitioner to the requirements of the Sunshine Act and the Right-to-Know Law.

The Supreme Court further held in *Mooney* that "[t]he receipt by Temple of increased state financial aid no more transforms Temple into a state 'agency' than the receipt of federal funds can make Temple an agency of the federal government." *Id.,* 448 Pa. at 430, 292 A.2d at 399. HDC is not receiving grants from the Commonwealth, as was Temple University, but is receiving rents for providing a leasehold to the Commonwealth as authorized by the Code. This lends further credence to the fact that HDC cannot be considered an agency. In essence, HDC is not receiving "free money" (grants) as was Temple in *Mooney.*

If the respondents are concerned that the citizens of this Commonwealth are not receiving an adequate leasehold for their money, then they should express this concern to HDC when HDC submits its monthly invoices to the Commonwealth for payment. The respondents cannot, however, seek to have access to HDC's inner workings by passing a piece of legislation deeming HDC an agency. Just as a private individual who leases space from HDC cannot compel the petitioner to open its meetings and records to public scrutiny, the same principle applies to the respondents. The fact that HDC receives substantial payments from the Commonwealth is not justification to open HDC's every decision to public inspection. If this were the case, then any organization which does business with the Commonwealth could be subject to the requirements of the Sunshine Act and the Right-to-Know Law by the passage of legislation deeming them an agency.

Further support for our holding that the HDC is not an agency as defined in the Sunshine Act and the Right-to-Know Law can be found in *Roy v. Pennsylvania State University,* 130 Pa. Commonwealth Ct. 468, 568 A.2d 751 (1990). In *Roy,* a group of undergraduate students sought access to the Penn State faculty salaries under the Right-to-Know Law. This Court held that, while Penn State is a state-related university, it was not a state agency whose records were subject to public inspection. HDC may be substantially related to the state because of the volume of business it conducts with the Commonwealth; however, this fact is not indicative of agency status.

Respondents, agree that, while HDC is not an agency as defined by the Sunshine Act and the Right-to-Know Law, Act 153 was enacted so that HDC would be subject to these public disclosure statutes and Act 153 in no way changes the legal character of HDC as a non-profit corporation. If HDC is subject to these provisions, the effect would be to transform it into an agency and, under its charter, it never purported to be an agency.

Respondent Tilghman argues that the petitioner's contention that it is not an agency is without merit. Senator Tilghman relies on *Vartan v. Harristown Development Corporation*, 655 F.Supp. 430 (1987), to support the proposition that, by virtue of certain contractual arrangements, the petitioner has taken over the public functions of the Harrisburg Redevelopment Authority and is, thus, an agency. In *Vartan*, the plaintiff was seeking to enforce certain antitrust provisions against the HDC and the City of Harrisburg. The Court, in *Vartan*, went through a lengthy analysis and determined that the delegation of authority which resulted in the petitioners exercising substantial authority over the redevelopment of downtown Harrisburg, while not anticipated or authorized by the General Assembly, would not expose the Harrisburg Development Corporation to anti-trust legislation and, furthermore, refused to rule on the issue of whether the HDC was a public entity.

■ Once again, summary judgment under Pa.R.C.P. No. 1035 will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Furthermore, in ruling on a motion for summary judgment, the Court must examine the record in a light most favorable to the non-moving party and any doubt as to a material issue must be resolved against the moving party. *Mancia.* Based on the definition of "agency" in both the Sunshine Act and the Right-to-Know Law, we conclude that the HDC is not an agency.

■ Assuming arguendo, however, that the Court were incorrect in its resolution of the issues in the immediately preceding discussion, HDC must still prevail since Act 153 fails to pass constitutional muster.

As can be seen by the entire factual matrix of this matter, the legislature first passed a general law to deal with the sought after information. As a result of public dissatisfaction, this law was repealed and Act 153 was designed as its replacement.

The Pennsylvania Constitution provides, in pertinent part, that "[t]he General Assembly shall pass no ... special law in any case which has been or can be provided for by general law." PA. CONST. art. III, § 32. It is obvious that Act 153 singles out HDC for regulation. Act 122 of 1988 was a general law which, of course, would have passed constitutional muster. However, Act 153, its successor, eliminated every nonprofit corporation in the Commonwealth except one, namely HDC. Therefore, it is obvious that HDC was singled out by this legislation. Such a specific designation is improper unless the classification is reasonable. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). The act proffers no reasonable basis for the classification—nor does one exist.

As has been previously discussed, HDC is the only nonprofit lessor receiving rentals in excess of $1.5 million. Furthermore, the entire legislative history of Act 153 indicates that it was designed to deal, de facto, solely with HDC. Such "special legislation" in the guise of a general law has been described as "the most specious and vicious form that special legislation can assume." *City of York School District's Appeal*, 169 Pa. 70, 72, 32 A. 92, 92 (1895).

■ It is also patently obvious that to grant the Commonwealth expanded powers relating to existing leases with HDC would, in fact, be an ex post facto impairment of a contractual obligation which was entered into through arms-length negotiation by the parties.

Act 153, in violation of the Pennsylvania Constitution [4] impairs the contractual obligations between the Commonwealth and HDC. To grant a tenant discovery rights and public access to the landlord's private business activities, during the term of a lease, most certainly "enlarges, abridges, or in any manner changes the intention of the parties as

4. **Ex Post Facto Laws; Impairment of Contracts**
   Section 17. No *ex post facto law*, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed. PA. CONST. art I, § 17 (emphasis added).

evidenced by their contract, imposing conditions not expressed therein." *Beaver County Building and Loan Association v. Winowich,* 323 Pa. 483, 492, 187 A. 481, 485 (dissenting opinion, 323 Pa. 483, 187 A. 921) (1936). *See also Helicon Corporation v. Borough of Brownsville,* 68 Pa. Commonwealth Ct. 375, 449 A.2d 118 (1982). Such a legislative enlargement of rights created during the term of a comprehensive and all-inclusive contract most certainly would be an impairment of obligations created pursuant to the lease.[5]

Accordingly, based upon the entire preceding discussion, Senator Tilghman's motion for summary judgment on the basis of legislative immunity is granted. Furthermore, the HDC's motion for summary judgment requesting injunctive and declaratory relief is granted.

## ORDER

AND NOW, this 14th day of September, 1990, the respondent, Senator Tilghman's, motion for summary judgment on the basis of legislative immunity is hereby granted and Harristown Development Corporation's motion for summary judgment is granted.

DOYLE, J., filed a dissenting opinion.

DOYLE, Judge, dissenting.

The majority, in my view, analyzes the situation before us incorrectly. It holds that Harristown Development Corporation (HDC) does not fall within the definition of an "agency" either in the Sunshine Act or the Right to Know Law. This is true. The majority then concludes that HDC is not an agency. The error of this analysis is that it ignores Act 153. The very purpose of Act 153 was to amend the definition of "agency" under the Sunshine Act and the Right to Know Law. The majority's view implies

---

5. This Court has repeatedly held that leases with the Commonwealth are to be considered contracts. *See Stambaugh's Air Service, Inc. v. Larson,* 97 Pa.Commonwealth Ct. 474, 509 A.2d 1377 (1986), *aff'd,* 514 Pa. 376, 524 A.2d 491 (1987).

that Act 153 has no legal effect. It is, however, an act of the General Assembly like any other and must be respected by this Court as an amendment to those laws, like any other.

Whether Act 153 is unconstitutional is a separate question; and although the majority ultimately concludes that it is unconstitutional, that does not mean, as the majority implies, that the legislature lacked authority to pass the law initially. The majority's implication, in my view, is not only legally incorrect but constitutes dangerous interloping into the legislative branch and severely strains the separation of powers doctrine. As our Supreme Court said in *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), "[w]e believe that nothing is more basic to the independence and integrity of the legislature than its ability to pass legislation." *Id.*, 510 Pa. at 173, 507 A.2d at 330.

I must also disagree with the majority's position that Act 153 offends Article III, Section 32, and Article I, Section 17 of the Pennsylvania Constitution. We must remember that a statute is presumed to be constitutional and that any doubts as to its constitutionality are to be resolved in favor of sustaining the statute. *Satinoff v. Commonwealth*, 128 Pa.Commonwealth Ct. 93, 562 A.2d 996 (1989). And, of course, the burden to prove a statute unconstitutional is on the challenger. *Id.*

The majority concludes that Act 153 is a special law in violation of Article III, Section 32 and bases this conclusion on the ground that HDC is the only nonprofit corporation regulated by the Act. Legislative classifications, however, are proper under Article III, Section 32 if they are reasonable. *Loomis v. Philadelphia School District Board of Education*, 376 Pa. 428, 103 A.2d 769 (1954). In *Wheeler v. Philadelphia*, 77 Pa. 338 (1875), the Pennsylvania Supreme Court ruled that a one member class (a city of the first class) is reasonable, as long as the class is open to new members. The *Wheeler* Court opined that the constitutional integrity of a classification does not depend upon the number in the class and that legislation is intended not just

for present but for future needs. Since *any* nonprofit corporation (including future ones) receiving in excess of $1,500,000 in rent from the Commonwealth is subject to regulation under Act 153, the Act withstands constitutional challenge on a special legislation basis.

Further, I believe that the majority's determination that the legislative history demonstrates that Act 153 was created specifically to regulate HDC is improper in the procedural context of this case. On summary judgment it is not this Court's function to *decide* issues of fact, but to determine whether or not there is an issue of fact. *Thorsen v. Iron and Glass Bank*, 328 Pa.Superior Ct. 135, 476 A.2d 928 (1984). The Court's determination that the legislature, in essence, had a bad motive for passing the Act is disputed. A "finding" to this effect is, accordingly, improper.

I must further disagree with the majority's conclusion that Act 153 impairs the contractual obligations of the Commonwealth and HDC in violation of Article I, Section 17. The contracts in question contain clauses stating that HDC will comply with "all present and future laws." Lease for State Office Building No. 1 at paragraph 15; Lease for State Office Building No. 2 at paragraph 14. Thus, the agreements between HDC and the Commonwealth clearly express that HDC will be held subject to laws passed after the execution of the contracts. In *Helicon Corp. v. Borough of Brownsville*, 68 Pa.Commonwealth Ct. 375, 449 A.2d 118 (1982), this Court held that Article I, Section 17 was not offended when a borough, subsequent to the formation of a contract with a cable television company containing a present and future laws clause, imposed new regulations on the cable television company. Following this reasoning, I would hold that Act 153 does not violate Article I, Section 17. For all the above-stated reasons I would deny HDC's motion for summary judgment.

With regard to the issue concerning Senator Tilghman, here again, I respectfully disagree. The majority concludes that HDC is not an agency, but a private corporation. It further reasons, however, that the Senator can gain access

to the information he seeks because as a Committee Chairperson he "has the responsibility to review and investigate the expenditure of Commonwealth funds." Not surprisingly there is no citational authority for the statement that the Senator's position as Committee Chairperson gives him the authority he now seeks to exercise. Unlike *Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), and *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), all relied upon by the Senator in his claim that his actions fall within the Speech and Debate Clause, there is no allegation here that the Senator's actions were taken pursuant to an investigation authorized by the Senate Appropriations Committee. The mere fact that the Senator used his official stationary does not, in my view, transform his actions into official ones. And while the Senator may maintain that he acted in his official capacity, and no doubt he genuinely believes that he has, whether his actions fall within the sphere of legislative debate is a question of law and cannot be resolved by relying upon what the Senator believes the law to be.

Because I can discern no authority to support the notion that Senator Tilghman was acting within the legislative sphere, his right to the information sought turns upon whether Act 153 is upheld. If it were upheld he would be entitled to the information not because he is a Senator, but because he would have the same right as any other citizen. But if, as the majority concludes, HDC is a private corporation, he is not, on that conclusion, entitled to the information. As our Supreme Court observed in *Gravel v. United States*, 408 U.S. 606, 621, 92 S.Ct. 2614, 2625, 33 L.Ed.2d 583 (1972):

No prior case has held that members of Congress would be immune ... if, in order to secure information for [a] hearing, [they] ... invaded the privacy of a citizen.

My conclusion would of course be different if some type of investigation had been authorized by the Senate Appropria-

tions Committee. That is not, however, the fact here. Accordingly, I would deny Senator Tilghman's motion for summary judgment.