Mooney et al., Appellants, *v.* Temple University of the Commonwealth System of Higher Education Board of Trustees.

Argued May 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William T. Hangley,* with him *William H. Ewing,* and *Ewing & Cohen,* for appellants.

*Michael Churchill,* with him *Peter Platten,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

*Robert J. Reinstein,* Assistant Professor of Law, Temple University and *Samuel Polsky,* Professor of Law, Temple University, attorneys for amici curiae.

OPINION BY MR. JUSTICE ROBERTS, June 28, 1972:

This appeal requires us to decide whether Temple University of the Commonwealth System of Higher Education[1] is a state "agency" for purposes of the Inspection and Copying Records Act,[2] thereby subjecting it to the requirement of making all its "public records" "open for examination and inspection by any

---

[1] Hereinafter referred to as Temple.
[2] Act of June 21, 1957, P. L. 390, §§1 et seq., 65 P.S. §§66.1 et seq.

citizen of the Commonwealth."[3] We agree with the Commonwealth Court that the Legislature, in designating Temple as a part of the Commonwealth System of Higher Education in order to enable Temple to receive increased financial assistance from the Commonwealth, did not transform Temple into a state "agency" for the purposes of the act. We affirm the decree of the Commonwealth Court.

Appellants, students at Temple, a member of the faculty, and the University Student Senate through its guardian ad litem,[4] commenced an original action in the Commonwealth Court seeking to compel appellees, the board of trustees, to make available for inspection "[d]etailed financial and budgetary information; minutes of Board of Trustees meetings; and minutes of meetings of committees of the Board of Trustees, including the Executive Committee."[5] The board of trustees had refused to honor appellants' requests for detailed financial information. The board did, however, make available "excerpts of meetings of defendant trustees and subcommittees of defendant trustees."[6] Appellants base their cause of action both on the Inspection and Copying Records Act and common law.[7] Appellees filed preliminary objections requesting dismis-

[3] Id. §2, 65 P.S. §66.2.

[4] The act provides the right of inspection to "any citizen," Id., and only "citizens" can seek judicial enforcement of rights under the act. Id. §4, 65 P.S. §66.4, repealed in part, Act of July 31, 1970, P. L. 673, §508(a)(90), 17 P.S. §221.508(a)(90). One of the named parties in this action is the Student University Senate through its guardian ad litem. Since the Temple University Student Senate is not a "citizen" of Pennsylvania, it clearly lacks standing to enforce rights under the act. Of course, any of its members who are citizens of Pennsylvania have standing to sue in their individual capacities.

[5] Appellants' amended complaint in trespass, paragraph 17.

[6] Id., paragraph 18.

[7] See note 10 infra.

sal, inter alia, on the ground that Temple is not an "agency" within the Inspection and Copying Records Act. The preliminary objections were sustained by the Commonwealth Court in a unanimous opinion by Judge CRUMLISH. *Mooney v. Temple University Board of Trustees*, 4 Pa. Commonwealth Ct. 392, 285 A. 2d 909 (1972). This appeal followed.

The Inspection and Copying Records Act provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Act of June 21, 1957, P. L. 390, §2, 65 P.S. §66.2. An "agency" is defined as: "Any department, board, or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, *or any state or municipal authority or similar organization* created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function." Id. §1, 65 P.S. §66.1(1) (emphasis added).[8]

---

[8] The act also defines "public record" as follows: "Any account, voucher or contract dealing with the receipt or disbursement of funds by any agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties or any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom, however,

In order to satisfy the statutory definition of a state "agency", appellants must show that Temple is

the record of any conviction for any criminal act." Act of June 21, 1957, P. L. 390, §1, 65 P.S. §66.1. After this suit was filed, this section was amended in several immaterial respects. Act of June 17, 1971, P. L.    , No. 9, §1.

Even were we to assume for the moment that Temple was subject to the disclosure requirements of the Inspection and Copying Records Act, appellants' request for information is so broad and sweeping that it reaches beyond the rights of inspection provided by the act. The act authorizes inspection of "[e]very public record," Id. §2, 65 P.S. §66.2, which is defined above as "[a]ny account, voucher, or contract . . . minute, order or decision. . . ." Id. §1, 65 P.S. §66.1. The Legislature's use of the singular preceded by "any" indicates clearly its intention to require that requests for inspection be specific and particular seeking disclosure of named documents or records rather than broad and unlimited requests for undefined bodies of documents or records. This requirement of specific requests for information is, of course, necessary to prevent agencies from suffering undue interference and obstruction of their daily functions; interference and obstructions would be unavoidable if agency officials always could be subjected to broad and unlimited requests for documents and records. *Commonwealth ex rel. Hagen v. Dunmore B. Sch. Dirs.*, 343 Pa. 440, 443, 23 A. 2d 468, 470 (1942) ; see *Irons v. Schuyler*, 321 F. Supp. 628, 629 (D.C.D.C. 1970) ; *Bruce v. Gregory*, 65 Cal. 2d 666, 423 P. 2d 193 (1967) ; *Linder v. Eckard*, 261 Iowa 216, 152 N.W. 2d 833 (1967).

*Irons v. Schuyler*, supra, involved requests for information from the Patent Office under the Freedom of Information Act, Act of September 6, 1966, Pub. L. 89-554, 80 Stat. 383, as amended, 5 U.S.C. 552 (a) (3), which authorizes a "request for *identifiable* records." Id. (emphasis added). The district court observed in denying relief: "The request in the instant case 'for all unpublished manuscript decisions' is not a reasonable request for identifiable records, but rather a broad, sweeping, indiscriminate request for production lacking any specificity. 'All decisions' is not a reasonable identifiable description, any more than asking for all the books in a particular library or all of the unpublished opinions of the United States District Courts. . . . A request for all is not specific enough to decide if any particular decision or decisions can be made available." *Irons v. Schuyler*, 321 F. Supp. 628, 629 (D.C.D.C. 1970).

a "State or municipal authority or similar organiza-
tion. . . ."[9] We must reject the contention that Temple,
a non-profit corporation chartered for educational pur-
poses, has become "similar" to a "State or municipal
authority"[10] solely because of increased financial as-
sistance from the Commonwealth.

In *Linder*, supra, the Iowa Supreme Court likewise observed in
construing the Iowa public records act: "Appellants place consider-
able stress upon the well-known and universally accepted principles
that the people have a right to know and that secrecy is to be
avoided in the conduct of public business. We agree with these
pronouncements. But this does not require, nor does our statute
do so, the disclosure of *all* records, writings, or reports which are
in the files of a public office at any time to any citizen demanding
such information. Such a result would impose an intolerable bur-
den on the public officer . . . [and] an unreasonable and harmful
interference with the day-to-day conduct of public business. . . ."
*Linder v. Eckard*, 261 Iowa 216, 152 N.W. 2d 833, 836 (1967) (em-
phasis in original).

The request, made in this case, for inspection of "financial
and budgetary information," Appellant's Amended Complaint in
Trespass, paragraph 17, is a "broad, sweeping indiscriminate re-
quest for production lacking any specificity." *Irons v. Schuyler*,
321 F. Supp. 628, 629 (D.C.D.C. 1970). To satisfy this request,
Temple would have to produce all its voluminous financial records
and budgetary information without any limits or restraints. The
Inspection and Copying Records Act clearly did not intend to place
such an onerous burden on those agencies subject to its disclosure
requirements.

[9] Act of June 21, 1957, P. L. 390, §1, 65 P.S. §66.1(1) (empha-
sis added).

[10] Id. Appellants also based their request to inspect on the
common law. There is a well-established right at common law to
inspect public records upon request in a reasonable manner. *Wiley
v. Woods*, 393 Pa. 341, 347-48 349 n.8, 141 A. 2d 844, 846-48, 848
n.8 (1958) (and cases cited therein) ; *Simon Election Case*, 353 Pa.
514, 518, 46 A. 2d 243, 245 (1946). It is unquestioned that the
right to inspect public documents was no broader at common law
than it is presently under the statute; it may have been more
restricted by being limited only to persons with a "personal or
property interest" in the matter sought to be disclosed. *Wiley v.
Woods*, 393 Pa. 341, 347-50, 141 A. 2d 844, 848-49 (1958). Therefore,

Temple was originally chartered as a non-profit corporation for educational purposes in 1888.[11] In 1907 the charter was amended to accord Temple university status.[12] In 1965, the Legislature passed the Temple University-Commonwealth Act.[13] The act amended Temple's corporate charter "by changing the name of Temple University to 'Temple University—of the Commonwealth System of Higher Education . . .' "[14] and further declared it "to be the purpose of this act to extend Commonwealth opportunities for higher education by establishing Temple University as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education."[15] More important, the act also provided that Temple "shall continue as a corporation for the same purposes as, and with all rights and privileges heretofore granted to Temple University. . . ."[16]

We conclude, as did the Commonwealth Court, that this latter declaration reveals an express legislative intent to preserve Temple's status as a non-profit corporation chartered for educational purposes. The receipt by Temple of increased state financial aid no more transforms Temple into a state "agency" than the receipt of federal funds can make Temple an agency of the federal government. A review of the Temple Uni-

---

disposition of appellants' claim under the Inspection and Copying Records Act a fortiari resolves appellants' claims at common law.

[11] Pursuant to the Act of April 29, 1874, P. L. 73. This is a statutory predecessor of the Non-Profit Corporation Law, Act of May 5, 1933, P. L. 289, art. I et seq., §§1 et seq., as amended, 15 P.S. §§7001 et seq.

[12] Act of November 30, 1965, P. L. 843, §2(2), 24 P.S. §2510-2(2).

[13] Id.

[14] Id. §3, 24 P.S. §2510-3.

[15] Id. §2, 24 P.S. §2510-2(7).

[16] Id. §3, 24 P.S. §2510-3.

versity-Commonwealth Act further supports our conclusion.

Appellants rely on various provisions of the Temple University-Commonwealth Act to bolster their contentions. They emphasize that the act altered the board of trustees by providing for appointment of four trustees respectively by the Governor, the President pro tempore of the Senate, and the Speaker of the House.[17] Nevertheless, these twelve Commonwealth trustees remain only a one-third minority of the board's total number of thirty-six trustees.

The majority of non-public trustees clearly retains the powers to manage and control the University. The act in its legislative findings describing Temple's status prior to passage of the act specifically declares that "Temple University owns and maintains land, buildings, and other facilities which are used, together with land and buildings owned by the Commonwealth of Pennsylvania, for higher education, *which land, buildings, and other facilities are under the entire control and management of the board of trustees. . . .*"[18] The Legislature then expressly directs that "[t]he entire management, control and conduct of the instructional, administrative, and financial affairs of the university is hereby vested in the board of trustees."[19] Additionally, the act provides that "[t]he board may exercise all the powers and franchises of the university and make bylaws for their own government, as well as for the university."[20]

The act also directs that "[i]n accordance with legislative appropriations made as provided by law, the Commonwealth may, *by agreement with the board of*

---

[17] Id. §4, 24 P.S. §2510-4.

[18] Id. §2(6), 24 P.S. §2510-2(6) (emphasis added).

[19] Id. §5, 24 P.S. §2510-5.

[20] Id.

*trustees,* acquire lands, erect and equip buildings, and provide facilities for the use of the university."[21] Had the Legislature intended to transform Temple into a state "agency", it would be hardly necessary to require that the Legislature reach an agreement with the board of trustees before it can expand or alter Temple's facilities. This requirement further supports the conclusion that Temple is not a state "agency" for present purposes.

Appellants also rely on fiscal controls, provided by the Temple University-Commonwealth Act to facilitate Commonwealth inspection of the University's expenditures of Commonwealth funds, to support their contention that Temple is now a state "agency". We are unpersuaded.

The Temple University-Commonwealth Act has clearly authorized increased financial assistance to Temple from the Commonwealth. The Commonwealth is obligated to provide sufficient funds to enable Temple to maintain the legislatively determined tuition and fee schedules.[22] Temple is permitted to participate in Commonwealth programs for capital development[23] and to support these programs the board of trustees is empowered to issue tax free bonds.[24] It is, of course, a fundamental practice of government that its grants of public funds to an appropriate institution are generally accompanied by some regulatory mechanism in order to insure that the public funds are being properly expended.

The Legislature in this instance provided several ways to assure proper expenditures of its appropriated funds. The act provides that "[f]or the purpose of

---

[21] Id. §7, 24 P.S. §2510-7 (emphasis added).

[22] Id. §6, 24 P.S. §2510-6.

[23] Id. §7, 24 P.S. §2510-7.

[24] Id. §9, 24 P.S. §2510-9.

assuring the proper accountability on the part of Temple University for the expenditure of the amounts appropriated by the Commonwealth, Temple University shall establish a Commonwealth Appropriation Account into which only the amounts appropriated by the Commonwealth shall be credited when received."[25] It is also required that "proper records" be kept of these accounts and at the completion of each fiscal year the University file with the Auditor General and the General Assembly "a statement setting forth the amounts and purposes of all expenditures made from both the Commonwealth Appropriation Account and other university accounts during said fiscal year."[26] The Auditor General is directed to conduct a "post-audit" and his responsibilities are expressly limited to auditing the funds provided by the Commonwealth and maintained in the Commonwealth Appropriation Account.

This regulatory scheme provided by the Legislature to safeguard against improper expenditures of public funds in no way intrudes upon or alters Temple's status as a non-profit corporation chartered for educational purposes. The express limitation of this regulatory scheme to the funds "maintained" in the Commonwealth Appropriation Account is another indication of the Legislature's intention to preserve Temple's prior status, and not to transform Temple into a state "agency".

Finally, we must note that the Legislature has provided for disclosure of Temple's financial expenditures of both its public and private funds. As stated previous-

---

[25] Id. §8, 24 P.S. §2510-8 (emphasis added).

[26] Id. The requirement that Temple file a record of both its public and private expenditures with the Auditor General and the Legislature is in no way inconsistent with our conclusion here. To the extent that the need for public funds at Temple will in part be determined by the availability of private funds, it is clearly in the Legislature's interest to be informed as to the state of Temple's private expenditures.

ly, Temple must file with the Auditor General and the Legislature at the end of each fiscal year a "statement setting forth the amounts and purposes" of public and private expenditures.[27] The Auditor General is directed to submit an annual report to the Legislature containing the results of his audits of Temple's expenditures of Commonwealth funds.[28] The President of the University is also required to make an annual "report of all the activities of the university, instructional, administrative and financial, for the preceding scholastic and fiscal year, to the board of trustees, who shall transmit the same to the Governor and to the members of the General Assembly."[29] These documents provide ample information concerning the expenditure of Commonwealth funds by the University. Furthermore, these documents also disclose the amounts of expenditures of private and non-Commonwealth funds by the University.

We must conclude, from our view of the statutes in question, that the Legislature by increasing its financial assistance to Temple did not alter Temple's status as a non-profit corporation chartered for educational purposes and clearly did not transform Temple into a state "agency" for purposes of the Inspection and Copying Records Act.

The decree of the Commonwealth Court sustaining the preliminary objections is affirmed. Each party to pay own costs.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

Temple University of the Commonwealth System of Higher Education is a state *agency* subject to the Inspection and Copying Records Act (Inspection Act).

---

[27] Id.

[28] Id. The Auditor General's Report to the Legislature is also available to the public through the Auditor General's office.

[29] Id. §10, 24 P.S. §2510-10. This report is available to the public through Temple University.

An *agency* under the Act is: "Any department, board, or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any state or municipal authority or *similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.*" (Emphasis supplied.)

The definition includes organizations similar to state or municipal authorities and there is modifying language after the words *similar organizations* which cannot be ignored.

State or municipal authorities are corporate entities with boards appointed by government officials, *performing essential governmental functions* by the authorized receipt and disbursement of taxpayers' money. These enumerated qualities of an *authority* are *the* essential qualities of an authority. Any organization possessing these same qualities must be an *agency* as defined by the Act—otherwise the use of the term *similar organization* in the Act would be meaningless.

*Similar organization* does not stand isolated in the definition. These two words are followed by language which describes exactly the current legal status of Temple University. In the language of the definition, Temple University of the Commonwealth System of higher Education was *created by a statute which declares in substance that* Temple University *has as its purpose the performance of an essential governmental function.*

The very Act which established Temple University of the Commonwealth System of Higher Education provides that Temple University shall be recognized *as an integral part of the system of higher education in Pennsylvania,* and designates Temple University as a *state-*

*related university.* The Act further states that its purpose is to extend Commonwealth opportunities for higher education by establishing Temple University *as an instrumentality of the Commonwealth* to serve as a state-related institution in the Commonwealth system of higher education.

The Inspection Act modifies the words *similar organization* by requiring a statute which declares that the organization *performs or has for its purpose the performance of an essential governmental function.* The declarations of the Temple University Commonwealth Act are exactly those called for in the definitions section of the Inspection Act.

The Inspection Act does not say that an organization must be identical to a state or municipal authority, it must only be a similar organization and there must be a statute stating that the organization performs essential governmental functions. I doubt if any more similar organization could be legally created in its essential qualities without actually being a state or municipal authority.

I note also that authorities perform essential governmental functions in the field of education—as does Temple University.

Temple University is, thus, subject to the Inspection Act and the appellants are entitled to relief within the limitations of that Act which provides for reasonable controls to avoid any concern with burdensome informational requests. Information which must be submitted by Temple University to the Auditor General does not exempt Temple University from the Inspection Act any more than authorities are exempt because they too are required to give information to the Auditor General.

The courts have been instructed by the Legislature as to the guides for ascertaining the intention of the Legislature. The Statutory Construction Act requires the courts to be guided by a presumption that the Legis-

lature intends *to favor the public interest as against any private interest.* Act of May 28, 1937, P. L. 1019, Art. IV, Sec. 52, 46 P.S. 552. In this matter which involves the receipt and disbursement of taxpayers' money by an *instrumentality of the Commonwealth,* the public interest can only be served by favoring the people's interest—not the interest of the people's representatives.

The order of the Commonwealth Court, sustaining preliminary objections, should be reversed.