568 A.2d 751

**Stephen ROY, John Orr, and Don Wonderling, Petitioners,**

v.

**The PENNSYLVANIA STATE UNIVERSITY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1989.

Decided Jan. 11, 1990.

American Civ. Liberties Union of Pennsylvania, Doreena Wong, with her, Stefan Presser, Legal Director, for petitioners.

R. Mark Faulkner, with him, Delbert J. McQuaide and Paul J. Tomczuk, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., for respondent.

Before CRUMLISH, Jr., President Judge, and COLINS and McGINLEY, JJ.

COLINS, Judge.

Stephen Roy, John Orr, and Don Wonderling, (petitioners) petition for review of the Pennsylvania State University's (Penn State) denial of petitioners' request for information on the salaries of certain administrative officers of Penn State pursuant to what is commonly referred to as the Right to Know Act (Act).[1]

█ Petitioners are undergraduate students at Penn State and citizens of the Commonwealth of Pennsylvania. By letter dated December 2, 1988, petitioners requested that Penn State make available to them for inspection and copying all documents and records containing specific information on the salaries of certain administrative officers of Penn State. Penn State denied the request in a letter dated January 6, 1989,[2] and signed by Steve A. Garban, Senior

1. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4. The Act provides that every public record of a state agency shall be open for examination by any citizen of Pennsylvania.

2. On the basis of its practical ramifications, we conclude that this letter constitutes a final order within the meaning of Pa.R.A.P. 341(a). *See In Re Estate of Montgomery*, 367 Pa.Superior Ct. 31, 532 A.2d 439

Vice President and Treasurer. The reasons stated for the denial were that Penn State's policy is to keep salary information confidential, and that Penn State is not a state agency but rather is a "state-related" university and as such, its records are not available for public inspection under the Act.

■ This Court has jurisdiction over actions brought to enforce rights granted under the Act by Section 763 of the Judicial Code, 42 Pa.C.S. § 763 (direct appeals from final orders of government agencies). However, just as we concluded that Temple University is not an agency of the Commonwealth whose public records must be made available for examination in *Mooney v. Temple University Board of Trustees*, 4 Pa.Commonwealth Ct. 392, 285 A.2d 909, *aff'd*, 448 Pa. 424, 292 A.2d 395 (1972), we now conclude that neither is Penn State such an agency.

Agency is defined under Section 1 of the Act, 65 P.S. § 66.1, as:

[a]ny department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

Petitioners argue that Penn State is a state agency within the meaning of the Act, because Penn State was created by the Commonwealth, receives financial support from the Commonwealth and has been held to be a state actor by Federal courts under Federal statutes. They argue that Penn State is the Commonwealth's public university and is not a "state-related" institution like Temple University, thus rendering *Mooney* inapplicable. Therein, the Supreme Court affirmed this Court's decision that "the Legislature, in designating Temple as a part of the Commonwealth

(1987); *Lansdowne v. G.C. Murphy Co.*, 358 Pa.Superior Ct. 448, 517 A.2d 1318 (1986).

System of Higher Education in order to enable Temple to receive increased financial assistance from the Commonwealth, did not transform Temple into a state 'agency' for the purposes of the act." *Mooney*, 448 Pa. at 426, 292 A.2d at 396.

Petitioners' argument that Penn State, unlike Temple, is a state-owned rather than a state-related university, is wholly unsupported. The legislature has repeatedly designated Penn State a state-related institution as distinguished from a state-owned or state-aided institution.[3]

A comparison of Temple's structure with that of Penn State's reveals that they are essentially the same. The *Mooney* court considered the following factors in determining that Temple University was not sufficiently similar to a state or municipal authority for purposes of the Act. First, Temple was originally chartered as a nonprofit corporation, but was established as an instrumentality of the Commonwealth to serve as a state-related educational institution pursuant to the Temple University–Commonwealth Act[4] which provided that Temple "shall continue as a corporation for the same purposes as, with all rights and privileges heretofore granted to, Temple University ..."[5]. Second, while the Temple University–Commonwealth Act altered the Board of Trustees to include public officials, nonpublic

---

**3.** Section 9 of the Pennsylvania Fair Educational Opportunities Act, Act of July 17, 1961, P.L. 776, *as amended,* 24 P.S. § 5009, states: the term 'State-related' institutions means the University of Pittsburgh, Temple University and *the Pennsylvania State University....* (Emphasis added.)

Also, Section 2 of the College and University Security Information Act, Act of May 26, 1988, P.L. 448, 24 P.S. § 2502-2 (Definitions), contains: 'State-related institutions' *The Pennsylvania State University,* the University of Pittsburgh, Temple University and Lincoln University and their branch campuses. (Emphasis added.)

Most recently, in Section 3 of the Pennsylvania College of Technology Act, Act of July 1, 1989, Act No. 1989–27, P.L. ——, 1989 Pa.Legis. Service No. 2 at 101–04 (Purdon), the legislature declared Penn State to be a state-related university and an instrumentality of the Commonwealth.

**4.** Act of November 30, 1965, P.L. 843, 24 P.S. §§ 2510-1—2510-12.

**5.** Section 3 of the Temple University–Commonwealth Act, 24 P.S. § 2510-3.

individuals constituted a majority of the trustees and the Board retained the power of management and control. Third, even though Temple receives considerable financial assistance from the Commonwealth, which is monitored by the Auditor General, the *Mooney* court concluded that:

> [i]t is of course a fundamental practice of government that its grants of public funds ... are generally accompanied by some regulatory mechanism in order to insure that the public funds are being properly expended.
>
> .    .    .    .    .
>
> [t]his regulatory scheme provided by the Legislature to safeguard against improper expenditures of public funds in no way intrudes upon or alters Temple's status as a non-profit corporation chartered for educational purposes.

448 Pa. at 443, 292 A.2d at 400.

Penn State was similarly incorporated for educational purposes as the Farmers' High School of Pennsylvania by the Act of February 22, 1855, P.L. 46, *as amended,* 24 P.S. §§ 2531–2535, 2540–2542, 2550 (act of incorporation). Sections 2 and 3 of the act of incorporation, 24 P.S. §§ 2532 and 2533, provided that a Board of Trustees consisting of thirteen, eleven of whom were private, nongovernmental representatives, together with the Governor and the Secretary of the Commonwealth, shall manage Penn State. Section 3 of the act of incorporation declared that the first Board of Trustees, and their successors in office,

> are hereby elected and declared to be a body politic and corporate in law, with perpetual succession, by the name, style and title of the Farmers' High School of Pennsylvania, by which name and title the said trustees, and their successors, shall be able and capable in law to take by gift, grant, sale or conveyance, by bequest, devise or otherwise, any estate in any lands, tenements and hereditaments, goods, chattels or effects, and at pleasure to alien or otherwise dispose of the same to and for the uses and purposes of the said institution ... and the said corporation shall by the same name have power to sue and be sued, and generally to do and transact all and

every business touching or concerning the premises, or which shall be necessarily incidental thereto, and to hold, enjoy and exercise all such powers, authorities and jurisdiction as are customary in the colleges within this commonwealth.

24 P.S. § 2533. Currently, the Board of Trustees is composed of 32 members only 10 of whom are Commonwealth representatives. The Board of Penn State retains authority over the disposition of the corporation's property, not subject to review by the Commonwealth. Section 3 of the act of incorporation, 24 P.S. § 2533. Moreover, while Penn State receives a substantial amount of money from the Commonwealth, the Commonwealth's participation in the financial matters of Penn State is essentially the same as its participation in those of Temple University.

The federal government in 1862 enacted what is popularly known as the Morrill Act [6] apportioning land to the several states to be sold at public auctions with the proceeds to be invested and the interest thereon to be:

appropriated . . . to the endowment, support, and maintenance of at least one college where the leading object shall be, without excluding other scientific and classical studies and including military tactics, to each such branches of learning as are related to agriculture and the mechanic arts, in such manner as the legislatures of the States may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life.

7 U.S.C. § 304. By the Act of April 1, 1863, P.L. 213, *as amended*, 24 P.S. §§ 2571–2573, 2575 (1863 act), our state legislature accepted the provisions of the Morrill Act, pledged the faith of the Commonwealth to carry it into effect, and designated Penn State as the recipient of the benefits of the Morrill Act until it directs otherwise. Thus, the Commonwealth provides annual appropriations to Penn State to meet at least a part of its operating expenses. However, Penn State still relies upon private sources for a

6. 7 U.S.C. §§ 301–308.

substantial portion of its income. Additionally, the Commonwealth has provided that any bonds issued by Penn State, and loans secured by mortgages, their transfers and the income therefrom, are free from taxation within the Commonwealth. Section 4.1 of the 1863 act, 24 P.S. § 2575.1.[7] In return for this aid, Penn State, like Temple, provides lower tuition and fees for students who are residents of Pennsylvania.

Petitioners emphasize that Penn State's receipt of public financial support is clearly indicative of agency status. The *Mooney* court rejected a similar argument concluding that just as the receipt of federal funds does not make Temple a federal agency, neither does the receipt of state funds make it a state agency.

Applying the rationale in *Mooney* to the facts herein, we must conclude Penn State clearly is not a state agency within the meaning of the Act. Accordingly, this Court has no jurisdiction to act. Hence, the petition for review is dismissed.

## ORDER

AND NOW, this 11th day of January, 1990, the Petition for Review of Stephen Roy, John Orr, and Don Wonderling, in the above-captioned matter, is dismissed for lack of jurisdiction.

---

**7.** This section was added by Section 1 of the Act of December 7, 1965, P.L. 1052.