935 A.2d 530

The PENNSYLVANIA STATE UNIVERSITY, Richard
Althouse, Rodney A. Erickson, Joseph V. Paterno,
and Gary C. Schultz, Appellants,

v.

STATE EMPLOYEES' RETIREMENT BOARD, Appellee,

Jan Murphy and the Patriot–News Company, Intervenors.

Supreme Court of Pennsylvania.

Argued May 14, 2007.

Decided Nov. 20, 2007.

248

John Alexander Snyder, Esq., Katherine Van Buskirk Oliver, Esq., McQuaide, Blasko, Fleming & Faulkner, Inc., State College, for Pennsylvania State University, et al.

Brian E. McDonough, Esq., PA State Employees' Retirement System, Harrisburg, for State Employee's Reitrement Board.

Teri L. Henning, Esq., for Pennsylvania Newspaper Association.

Craig James Staudenmaier, Esq., Nauman, Smith, Shissler & Hall, L.L.P., Harrisburg, for Patriot–News Co. and Jan Murphy.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice FITZGERALD.

We decide whether Pennsylvania's Right to Know Act (RTKA), 65 P.S. §§ 66.1–66.9, authorizes the release to news media of salary and related information pertaining to various employees of Pennsylvania State University (PSU). Common-

wealth Court held the State Employees' Retirement Board properly decided to release the information. Appellants, PSU's head football coach and professor Joseph Paterno, executive vice-president/provost Rodney Erickson, senior vice-president/treasurer Gary Schultz, and former budget officer Richard Althouse filed this appeal, and we affirm.

### Background:

The State Employees' Retirement System ("SERS") is the Commonwealth agency responsible for administering the Commonwealth's defined retirement benefit plan for individuals statutorily defined as "state employees." *See* 71 Pa.C.S. § 5102. Generally, in a defined benefit plan, such as that administered by SERS, retirees receive an annuity calculated (or "defined") by a formula, and paid according to the same. Under the Commonwealth's defined benefit plan, all contributions are commingled in the State Employees' Retirement Fund. SERS then uses the fund and investment returns thereon to pay the Commonwealth's pension obligations, i.e., each retired state employee's defined benefit. SERS explains that it invests the fund as a fungible whole to meet the Commonwealth's obligations. Thus there is no dispute here as to whether the fund at issue is public in nature. It is.

The RTKA provides that public records shall be accessible for public inspection and duplication. The RTKA excludes, however, any record as to which publication is restricted by law, or any disclosure that would operate to the prejudice or impairment of a person's reputation or personal security. 65 P.S. §§ 66.1–66.2. The intent of the RTKA is to allow individuals and entities access to public records to discover information about the workings of government, favoring transparency and public access regarding any expenditure of public funds. *Sapp Roofing Co., Inc. v. Sheet Metal Workers' Intern. Ass'n, Local Union No. 12*, 552 Pa. 105, 713 A.2d 627, 629 (1998) (plurality).

Although PSU is not currently subject to the RTKA as a Commonwealth agency,[1] the parties have stipulated that PSU

---

1. *See Roy v. Pennsylvania State University*, 130 Pa.Cmwlth. 468, 568 A.2d 751, 752 (1990). *But see* 2007 PA Senate Bill 1 (March 29, 2007)

employees are eligible, but not required, to participate in the retirement plan operated and administered by SERS.[2] Appellants in this matter each elected to participate in SERS,[3] contributed to, and are guaranteed to derive a benefit from, the Commonwealth's retirement fund.[4]

On December 19, 2002, reporter Jan Murphy and the Patriot News Company ("Appellees") requested information from SERS pertaining to the Appellants' salaries and service history pursuant to the RTKA. Upon Appellants' Exceptions, however, the Board submitted the matter to a hearing examiner. Based on the examiner's recommendation, and pursuant to the RTKA, the Board ultimately granted Appellees' request for the information at issue. The Board concluded that the information sought was "public record" for purposes of the RTKA because information pertaining to Appellants' salary and service history fits the definition of an "account, voucher or contract dealing with the receipt or disbursement of funds by an agency." *Pennsylvania State University v. State Employees' Retirement Bd.*, 880 A.2d 757, 764 (Pa.Commw.2005) (*quoting* 65 P.S. § 66.1). The Board further concluded that disclosure of Appellants' salary and service history is not precluded by the personal security exception to the RTKA. The Commonwealth Court affirmed, holding: "[b]ecause [Appellants'] compensation information is instrumental in calculating a defined benefit, to which they have a *vested contractual right,* and that right unquestionably involves the disbursement of Commonwealth funds, the compensation information falls within the definition of public record." *Id.* at 765 (emphasis in original). The court reasoned that salary alone is not so personal and inextricably linked to a person's identity as to threaten one's personal security, and that the salaries of every state employee are accessible as public record, allowing the

and 2007 PA Senate Bill 765 (Apr 12, 2007) (pending legislation which would amend the RTKA, specifically listing state-aided universities such as PSU as being subject to the RTKA).

2. Commonwealth of Pennsylvania, State Employees' Retirement Board, Op. of Hearing Examiner, FF. 12 (May 10, 2004).

3. *Id.* at FF. 7.

4. *Id.* at FF. 85.

public to meaningfully evaluate the wisdom and appropriateness of these state appropriations. *Id.* at 767.

## I.

The central issue now before this Court is whether the public has a right to know the specific basis of guaranteed disbursements to certain individuals from the Commonwealth's retirement fund, notwithstanding any privacy interests affected thereby. We hold that the public does in fact have a right to such information to the extent necessary to justify all guaranteed disbursements from the fund. Our holding applies to names, service history and salaries, but does not extend to information pertinent to an individual's personal security such as addresses, telephone numbers, or social security numbers.

## II.

The first question presented to the Court in this matter is whether the information sought constitutes public record under the RTKA? We hold that it does. The RTKA defines the term "public record" as:

> [a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, [t]hat the term "public records" ... shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security....

65 P.S. § 66.1. Where the RTKA specifies, for the benefit of the public and in favor of governmental transparency, that *any* account, voucher or contract dealing with the receipt or

disbursement of funds by a Commonwealth agency constitutes public record, the RTKA encompasses all records in any format establishing contractual rights with respect to, detailing, or otherwise evidencing a Commonwealth agency's receipt and/or disbursement of funds. In addition, this Court has determined that the RTKA reaches materials that are not facially accounts, vouchers, or contracts, but nonetheless bear some close connection with one or more of these statutory categories. *LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449, 456 (2001).

Appropriately, in construing the Right to Know Act, the Commonwealth Court has consistently and properly held that the term "account" is to be broadly construed for the benefit of the public, encompassing, at minimum, the Commonwealth's financial records of debit and credit entries, as well as monetary receipts and disbursements. *See LaValle v. Office of General Counsel of Com.*, 737 A.2d 330, 332 (Pa. Commw.1999) (" 'account' is to be broadly construed, and need only constitute 'records evidencing disbursement. . . .' "); *Carbondale Tp. v. Murray*, 64 Pa.Cmwlth. 465, 440 A.2d 1273, 1274 (1982) ("[w]ithout attempting to exhaust all of the acceptable definitions of the word 'account,' we deem it sufficient for deciding the instant case to define 'account' as a record of business dealings between parties"); *Butera v. Com., Office of Budget*, 29 Pa.Cmwlth. 343, 370 A.2d 1248, 1249 (1977) (the General Assembly intended the word "account" to include a record of debit and credit entries to cover transactions during a fiscal period of time). Because the word "account" can be properly defined in its ordinary sense to denote, *inter alia*, a list or enumeration of financial transactions,[5] and because SERS participants make specified financial contributions to the retirement fund in exchange for specified financial returns, we do not hesitate to conclude that SERS necessarily maintains records establishing contractual rights with respect to, detailing, and evidencing monetary receipts and disbursements pertaining to every SERS member. There would be no

**5.** *See The American Heritage Dictionary of the English Language, Fourth Edition.* Houghton Mifflin Company, 2004.

basis upon which to calculate appropriate annuities otherwise. Moreover, as correctly stated by the Commonwealth Court below, Appellants have a vested contractual right, based upon these records, to the defined benefits which they have earned as state employees. *Pennsylvania State University*, 880 A.2d at 765. Therefore, because information pertaining to Appellants' salaries and service history is used to establish their contractual rights, and is detailed and evidenced in the form of records which otherwise fit the definition of "account, voucher or contract dealing with the receipt or disbursement of funds by an agency," the information in question qualifies as public record to the extent that it is not otherwise restricted by law.

We note that Appellants cite this Court's opinion in *Tribune–Review Pub. Co. v. Department of Community and Economic Development*, 580 Pa. 80, 859 A.2d 1261 (2004), for the proposition that information does not qualify as public record unless it is created by a public agency.[6] Such reliance is misplaced here. In *Tribune Review*, this Court upheld a Department of Community and Economic Development decision not to produce information pertaining to applicants who were *denied* state funded grants. In so doing, this Court stated: "we have recently confirmed that the Act is designed to require disclosure only of documents prepared by the government agency *or at the express direction of the government agency*." *Id.* at 1268 (emphasis added). *But see id.* at 1269 (dissenting opinion by Saylor, J., joined by Castille and Nigro, JJ.).[7] Because no funds were received, distributed or

6. We also note Mr. Chief Justice Cappy's dissent is premised upon the same rationale. Respectfully, we believe that our analysis herein addresses Appellants' argument as well as the Chief Justice's dissent.

7. "I also differ with the majority's interpretation of *Tribune–Review Publishing Co. v. Westmoreland County Housing Auth.*, 574 Pa. 661, 833 A.2d 112 (2003), as confirming that the Right to Know Act requires disclosure only of documents prepared by, or at the express direction, of a government agency. *See* Majority Opinion, *op.* at 94, 935 A.2d at 1270. To the contrary, such decision makes clear that the statutory definition of a public record 'applies to a wide range of documents that contain information relating to the disbursement of public funds or an action of an agency that fixes the rights or obligations of individuals.' " *Tribune–Review Pub. Co. v. Department of Community and Economic*

guaranteed by the agency in *Tribune Review*, such that the information requested did not pertain to such receipt, distribution or guarantee, *Tribune Review* is easily distinguishable from the matter presently before the Court. Here, as stated above, the information requested pertains to funds which were *actually received* by the Commonwealth, and funds which are *guaranteed to be distributed by the Commonwealth based on the information requested.* Additionally, SERS *requires* submission of the information requested as such information is absolutely essential to the function which SERS performs. Indeed, the parties have stipulated that PSU is required to furnish information to SERS on a regular basis in accordance with the State Employees' Retirement System's Magnetic/Electronic Media Reporting Instructions.[8] SERS necessarily maintains the information at issue in order to perform its statutorily mandated function. Thus it cannot be said that the information requested here is voluntarily prepared by a private entity in the absence of an agency's direction to do so, as is the case with a private entity's application for discretionary state funding. Therefore, we hold that this Court's Opinion in *Tribune Review* does not prevent disclosure in the instant matter.

## III.

As noted above, the RTKA provides that the term "public records" shall not include any record to which access or of which publication is prohibited, restricted or forbidden by "statute, law or order or decree of court." 65 P.S. § 66.1. In order to show the existence of such a bar to publication, Appellants raise certain provisions and principles of law which we now address *seriatim.*

## A.

Appellants cite this Court's ruling in *Mooney v. Board of Trustees of Temple University*, 448 Pa. 424, 292 A.2d 395

*Development*, 859 A.2d at 1270 (citing *Tribune–Review Publishing Co. v. Westmoreland County Housing Auth.*, 833 A.2d at 116).

8. Commonwealth of Pennsylvania, State Employees' Retirement Board, Op. of Hearing Examiner, FF. 17 and 23.

(1972), as a bar to publication. In *Mooney,* certain students, faculty and student government organizations at Temple University sought to compel Temple's Board of Trustees to disclose financial and budgetary information, and committee meeting minutes. This Court held that, by statutory definition, Temple University was not a state agency obligated to open its records for public inspection under the then applicable version of the RTKA. *Id.* at 396. Relying on *Mooney,* Appellants argue that PSU cannot be required to divulge the information requested because PSU is not a state agency. Importantly, however, the question before the Court is not whether PSU must disclose the information at issue pursuant to the RTKA, but whether SERS must disclose the information requested pursuant to the RTKA. Without question, SERS is a state agency subject to the RTKA. Moreover, the information requested pertains to PSU employees who have voluntarily elected to participate in SERS, "state employees" by statutory definition. *See* 71 Pa.C.S. § 5102. These facts render the instant matter very different from *Mooney.* *Mooney* does not bar disclosure.

## B.

Appellants next argue that disclosure of information pertaining to their salaries and service history is prohibited by common law fiduciary duties. The threshold question raised by this argument is whether, and to what extent, SERS qualifies as a fiduciary. The General Assembly has established that the State Employees' Retirement Board has limited fiduciary duties in that the Board, "stand[s] in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund [such that it] shall not profit either directly or indirectly with respect thereto." 71 Pa.C.S. § 5931. The Board is obligated "to invest and manage the fund for the exclusive benefit of the members of the system." *Id.* As the board of a Commonwealth agency, however, the Board is also permitted to consider the general welfare of the Commonwealth and its citizens. *Id.*

All SERS records are public records except as provided by the General Assembly. *See* 71 Pa.C.S. § 5902(e)(1). Under 71 Pa.C.S. § 5902(e)(2), which delineates between public and non-public records,

> [a]ny record, material or data received, prepared, used or retained by the board or its employees, investment professionals or agents *relating to an investment* shall not constitute a public record subject to public inspection under ... the Right–to–Know Law, *if, in the reasonable judgment of the board, the inspection would:*
>
> (i) in the case of an alternative investment or alternative investment vehicle, involve the release of sensitive investment or financial information *relating to the alternative investment or alternative investment vehicle* which the fund was able to obtain only upon agreeing to maintain its confidentiality;
>
> (ii) cause substantial competitive harm to the person from whom sensitive investment or financial information *relating to the investment* was received; or
>
> (iii) *have a substantial detrimental impact on the value of an investment* to be acquired, held or disposed of by the fund or would cause a breach of the standard of care or fiduciary duty set forth in this part.

71 Pa.C.S. § 5902(e)(2) (emphasis added). We note that the records excepted from public inspection pertain exclusively to investment-related information, to the fiduciary duty discussed *supra*, and to the standard of care associated therewith. We find nothing in the enumeration of the Board's fiduciary duties which gives any indication that the General Assembly intended to remove SERS from the disclosure requirements of the RTKA in matters not directly related to investments, that do not involve the Board's obligation to derive no profit from investments and disbursements, and that do not involve the Board's obligation to invest and manage the fund for the exclusive benefit of SERS Members. Because the information requested in the matter before the Court is not directly related to investments, is unrelated to the Board's obligation to derive no profit, and is not directly related to the fund's

investment and management, the Board's limited fiduciary duties do not prohibit disclosure of the information at issue.

## C.

██ Appellants also argue that disclosure of information is restricted by the Gramm–Leach–Bliley Act (GLBA), 15 U.S.C. § 6801 *et seq.* Appellants argue that the GLBA restricts disclosure such that SERS may not disclose the information at issue to any "non-affiliated third party." 15 U.S.C. § 6802. When the media requests disclosure of public information from a Commonwealth agency pursuant to the RTKA, the requester then stands in the shoes of the general public, which has the right to know such information. We decline to hold that the general public is a "non-affiliated third party" with respect to any Commonwealth agency. On the contrary, our government and the general public could hardly be more closely affiliated as our government is founded upon the authority of the public and exists solely for its overall benefit. *See* Pa. Const. Art. 1, § 2.

Moreover, we note that the GLBA regulates disclosure of nonpublic personal information in the financial services industry. The purpose of the United States Congress in enacting the GLBA was "to enhance competition in the financial services industry by providing a prudential framework for the affiliation of banks, securities firms, insurance companies, and other financial service providers. . . ." H.R. CONF. REP. 106–434, 1, 1999 U.S.C.C.A.N. 245 (1999). Along these lines, the federal legislature was concerned with information sharing practices among financial institutions and affiliates, as affecting the customers of those financial institutions. *See* 15 U.S.C. § 6808. Having carefully reviewed Appellants' argument, we are not convinced that the federal legislature intended the GLBA to regulate a non-profit, non-competitive, state government agency in the administration of its state employee benefit plan.

██ Furthermore, whereas the GLBA is designed to protect "consumers" of the financial services industry (*see, e.g.,* 15 U.S.C. § 6802), the GLBA mandates that Federal agencies

such as the Federal Trade Commission and the Securities and Exchange Commission prescribe such regulations as are necessary to carry out the purposes of the GLBA. 15 U.S.C. § 6804. In so doing, the Federal Trade Commission and the Securities and Exchange Commission have each promulgated identical regulations unequivocally stating: "[a]n individual is not your consumer solely because he or she is a participant or a beneficiary of an employee benefit plan that you sponsor or for which you act as a trustee or fiduciary." 16 C.F.R. § 313.3(e)(2)(viii); 17 C.F.R. § 248.3(g)(2)(viii). The GLBA is designed to protect consumers' non-public personal information while in the coffers of institutions within the financial services industry. We hold that the GLBA has no application to the SERS.

### D.

Appellants also attempt to raise their rights to privacy as a bar to disclosure. The RTKA accounts for the individual's right to privacy by excluding from the definition of "public record" "any record, document, material, exhibit, pleading, report, memorandum or other paper, . . . which would operate to the prejudice or impairment of a person's reputation or personal security." 65 P.S. § 66.1. For some time, Pennsylvania courts have interpreted this reputation and personal security exception as creating a privacy exception to the RTKA's general disclosure rule. *See Goppelt v. City of Philadelphia Revenue Dept.,* 841 A.2d 599, 603–604 (Pa. Cmwlth., 2004) (citing *Cypress Media, Inc., v. Hazleton Area School District,* 708 A.2d 866, 870 (Pa.Cmwlth., 1998)). Thus while Appellants invite this Court to separate our right to privacy analysis from our personal security exception analysis, it is clear that no such division is warranted. The appropriate question is whether the records requested would potentially impair the reputation or personal security of another, and whether that potential impairment outweighs the public interest in the dissemination of the records at issue. *Sapp Roofing,* 713 A.2d at 629. This analysis subsumes the question of whether the potential impairment of any privacy interest

outweighs the public interest in the dissemination at issue. We hold that Appellants' privacy rights are insufficient to outweigh the public interest in publication of the factual bases for, and details of, guaranteed disbursements of Commonwealth funds.

In *Sapp Roofing*, a labor union requested the payroll records of a non-union private contractor which were in the possession of a Commonwealth school district. The records related to roofing work performed on certain school district buildings and paid for using state funding. The contractor submitted payroll records to the school district pursuant to the Prevailing Wage Act ("PWA"), 43 P.S. §§ 165–1, *et seq. Sapp Roofing Co.*, 713 A.2d at 628. The union sought the records for the stated purpose of ensuring that the contractor complied with the PWA; however, the requested records contained information such as the names, addresses and social security numbers of individual employees, information certainly beyond that which was necessary to ensure compliance with the PWA. *Id.*

This Court concluded that the disclosure of personal information such as names, addresses, social security numbers, and phone numbers, reveals little, if anything, about the school district's compliance with the PWA. This Court thus decided that the union would be given access to the school district records containing wage information regarding Sapp Roofing's employees, but that the personal information, i.e., the names, addresses, social security numbers, and phone numbers could not be released. *Id.* at 630.

The public interest asserted in *Sapp Roofing* was the school district's compliance with the PWA; the specific identification of Sapp Roofing employees was not at all relevant to the asserted interest. Here, however, our focus is not so narrow; the public interest asserted herein is the people's right to governmental transparency in the form of their right to know the identities of individuals receiving, or standing to receive, Commonwealth funds and the specific basis therefor. Such requests for information go to the heart of the RTKA and are precisely what the General Assembly intended when codifying

the public's right to know. Thus we recognize that the public interest asserted herein is materially different from that asserted in *Sapp Roofing*.

With regard to the right to privacy in one's social security number, telephone number or home address, we would have greater difficulty concluding that the public interest asserted here outweighs those basic rights to privacy. Such is not the scenario presently before the Court, however. The requests for disclosure in this matter specifically excluded such personal information. We hold that the public's interest in governmental transparency regarding receipts and disbursements of Commonwealth funds generally outweighs any recipient's, or future recipient's, right to privacy with respect to his or her name and relevant financial data. Any person who desires to keep such information private should refuse Commonwealth disbursements, and should decline SERS participation. The public has a right to know how the Commonwealth spends its money.

Much argument has been made regarding whether Appellants have a reasonable expectation of privacy in the information requested. Appellants may very well have had a *subjective* expectation of privacy regarding their salaries and service history in light of the fact that PSU generally regards this information as confidential. SERS, however, is not PSU. And while PSU is only a "state-related" university,[9] SERS is a Commonwealth agency and therefore an extension of the Commonwealth. Individuals and private entities cannot reasonably expect the Commonwealth to keep secrets from its citizens regarding the disbursement of public funds, past, present or future. The minute any individual or entity voluntarily submits any information to the Commonwealth for the purpose of deriving a financial benefit and acquires such benefit or a contractual interest therein, that information ceases to be private in nature. It is inappropriate for the Commonwealth to keep information relevant to Commonwealth expenditures secret from the public under ordinary

9. *But see supra* note 1.

circumstances. As stated in the Pennsylvania Constitution, "[a]ll power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness." Pa. Const. Art. 1, § 2. Our government exists for the people, and this Court must interpret all legislation accordingly. It is of no moment that Appellant Paterno elected to join SERS prior to the 1957 enactment of the RTKA, as transparency has been the responsibility of this government since its inception. The RTKA is merely a codification of principles already deeply imbedded in Commonwealth policy. There can be no reasonable expectation that the Commonwealth will keep its finances secret from the general public.

By statutory definition, PSU employees who elect to participate in SERS are state employees. 71 Pa.C.S. § 5102(1)(iv). Thus the privacy rights at issue, if any, are those that any state employee would have respecting the release of his name, relevant salary and relevant work history from SERS. It is well known that the salaries paid to Commonwealth legislators, judges, executive officers and their supporting staff are public information. SERS will not be required to treat PSU employees who elect SERS participation any differently.

## IV.

Finally, Appellants raise the issue of whether the Commonwealth Court erred in failing to recognize the appropriateness of the "balancing test" analysis discussed *supra*, and "improperly resurrect[ing] the 'intrinsically harmful' standard" previously rejected by the Commonwealth Court. Appellants' Brief at 22. Appellants' argument is fatally premised on the false implication that the Commonwealth Court failed to balance Appellants' privacy concerns against the countervailing government interest below. The Commonwealth Court committed no such error.

Appellants correctly point out that prior to this Court's decision in *Denoncourt v. Commonwealth of Pa., State Ethics*

*Commission,*[10] the Commonwealth Court held that disclosure of information which was intrinsically harmless would not fall within the personal security exception to the RTKA. *See Moak v. Philadelphia Newspapers, Inc.,* 18 Pa.Cmwlth. 599, 336 A.2d 920, 924 (Pa.Cmwlth., 1975). In *Moak,* the City Hall Bureau Chief for The Philadelphia Inquirer sought access to payroll records of the Philadelphia Police Department, records which contained each employee's name, class and department, payroll number, annual salary and various other personnel data. *Id.* at 921. The Commonwealth Court held that its duty under the RTKA was to "determine only whether the public records themselves would operate to the prejudice or impairment of reputation, not whether their use with other information might have such harmful consequence." *Id.* at 924. Noting that the payroll records, without more, were incapable of operating to the prejudice or impairment of employee reputation, the Commonwealth Court held that the payroll records were not excepted from disclosure. *Id.* Subsequently, the Commonwealth Court rejected the "intrinsically harmful" requirement in favor of balancing the privacy right and countervailing state interests. *See Tribune–Review Pub. Co. v. Bodack,* 875 A.2d 402, 408 (Pa.Commw.2005) (stating that the holdings in *Moak* and its progeny are at odds with this Court's decision in *Denoncourt* and others which have recognized a constitutional right to privacy, and noting that the requirement that records be "intrinsically harmful" is not contained in 65 P.S. § 66.1).

 In its Opinion below, the Commonwealth Court cited *Moak,* noting its holding that disclosure of information must be intrinsically harmful to fall within the RTKA's personal security exception. *Pennsylvania State University,* 880 A.2d at 767. The court then proceeded, however, with an appropriate balancing analysis as follows:

**10.** 504 Pa. 191, 470 A.2d 945, 948 (1983) (Ethics Act case affirming the propriety of balancing an individual's right to privacy against a countervailing state interest which may justify an intrusion on privacy in appropriate circumstances).

In *Times Publishing Co. v. Michel,* this Court noted that a personal privacy right under the Pennsylvania Constitution exists under the RTKA. *Times Publishing* addressed the issue of whether portions of firearm application records that disclosed applicants' addresses, telephone and social security numbers should be withheld because the information may compromise personal security. This Court held that in analyzing the personal security exception to the RTKA, we must apply "a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure." *Times Publishing,* 159 Pa.Cmwlth. 398, 633 A.2d [1233,] 1239 [(Pa. Cmwlth., 1993)].

\* \* \* \*

Any privacy right Employees may have had in their personal salaries was extinguished when they voluntarily contracted to participate in a government program managed by a public agency for which compensation disclosure is required by law.

Because Employees have failed to convince this Court that they have a privacy right in their salary information, the personal security exception does not apply.

*Pennsylvania State University,* 880 A.2d at 767–768. Thus we conclude that the Commonwealth Court applied the appropriate balancing test, notwithstanding its reference to *Moak's* "intrinsically harmful" analysis. For clarity's sake, we now hold, as stated above, that where privacy rights are raised as a bar to disclosure of information under the RTKA, our courts must determine whether the records requested would potentially impair the reputation or personal security of another, and must balance any potential impairment against any legitimate public interest. *Sapp Roofing,* 713 A.2d at 629. The issue of whether a particular disclosure is intrinsically harmful may be relevant in determining the weight of any privacy interest at stake for purposes of conducting the appropriate balancing test, as indeed intrinsic harmfulness may affect the reasonableness of any privacy expectation. Intrinsic harmful-

ness, however, may not be regarded as the sole determining factor in the privacy analysis. Our courts may not forgo the balancing of interests where privacy rights and public interest conflict.

## V.

For the foregoing reasons, the decision of the Commonwealth Court is hereby *AFFIRMED.*

Justice BALDWIN did not participate in the consideration or decision of this matter.

Justice SAYLOR, EAKIN and BAER join the opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice CAPPY, dissenting.

Because I do not agree that the records at issue in this matter are "public records" as defined in The Right to Know Act, 65 P.S. § 66.1, I must respectfully dissent. Distinct from the majority, I find our decision in *Tribune–Review Pub. Co. v. Dep't. of Community and Economic Development,* 580 Pa. 80, 859 A.2d 1261 (2004), compels such a result in this case.

At issue in *Tribune–Review* was whether a log kept by the Department of Community and Economic Development was a public record under The Right to Know Act. In reviewing this issue, a majority of this court stated that "we have recently confirmed that the [Right to Know Act] is designed to require disclosure only of documents prepared by the government agency or at the express direction of the government agency." *Id.* at 1268. While the dissenting opinion disagreed with this statement, it concluded that the statutory definition of a public record "applies to a wide range of documents that contain information relating to the disbursement of public funds or an action of an agency that fixes the rights or obligations of individuals." *Id.* at 1270 (Saylor, J. dissenting). Under either theory of The Right to Know Act, it is clear that the records in this case are not public records, since the information that is

being sought—the salaries of non-retired PSU employees and their service history—is neither a record prepared by SERS or at its express direction nor does the information relate to the disbursement of public funds or fix the rights or obligations of non-retired employees.

Indeed, *Tribune–Review* makes this very point when it concluded that a database, which was "simply an electronic storage facility, and not a decisional document" was not a public record. *Id.* at 1268. Furthermore, we explained that "a log" compiled by a state agency, which is merely a collation of data provided by applicants, did not amount to a public record. *Id.* "Consequently, a database that is simply an assemblage of information provided by applicants cannot be deemed a public record simply because the agency undertakes the secretarial task of inputting data." *Id.*

In this case, we are faced with a similar situation. Until the employee retires, the salary and years of service information is not utilized by SERS for any purpose. Rather, it is information that is simply collated and/or assembled by SERS for use at some date in the future when the employee is ready to or has retired. That information may become a public record at the time the retirement benefits are computed and paid by SERS, but until that point, there has been no disbursement of public funds or even the anticipation of disbursement of public funds to the employees under The Right to Know Act. Likewise, there is no "fixing" of employees rights or obligations at this point. Accordingly, I would conclude that the instant matter is controlled by *Tribune–Review,* and I respectfully dissent.

Justice CASTILLE joined this dissenting opinion.